MORTON v. MORRIS (two cases).

(Circuit Court of Appeals, Eighth Circuit. February 17, 1896.)

Nos. 713 and 714.

CONTRACTS—DURESS—THREATS TO ENFORCE LEGAL RIGHTS.

On June 20, 1893, there was an unsettled account between complainant and defendant, growing out of previous business transactions extending over 10 years, and defendant, who had been complainant's agent, and for a part of the time his partner, was largely indebted to complainant. On that day a settlement was agreed upon between them, as a part of which defendant gave to complainant two mortgages. Upon suit being brought to foreclose such mortgages, defendant interposed an answer and filed a cross bill asking cancellation of the mortgages, in each of which he averred that at the time when the settlement was made a financial crisis existed, and it was very difficult to raise money; that defendant was engaged extensively in business, and both his assets and liabilities were large; that complainant took advantage of the business situation and of the danger to defendant's credit which would result from any such demand upon him, or from any litigation, to enforce an unfair settlement, and, by demanding an immediate settlement, and threatening, in bad faith and for the purpose of coercion, to institute a suit for an accounting, and to demand the appointment of a receiver, compelled defendant to agree to a settlement which was unfair, as a part of which the mortgages were given; that defendant only agreed to such settlement upon complainant's promise to say or do nothing to injure defendant's credit, but that complainant had attacked his credit in statements to third persons, whereby the sole

inducement for defendant's agreeing to the settlement had failed. It was also averred generally that the settlement was unjust and unfair, and that the property taken by the defendant was overvalued, but no facts and details were stated. *Held,* that the allegations of the answer and cross bill were insufficient, either as a defense to the foreclosure or as a ground for canceling the mortgages.

## Appeals from the Circuit Court of the United States for the District of North Dakota.

This suit was brought by Edwin Morris, the appellee, against Charles A. Morton, the appellant, to foreclose two mortgages on lands situated in the state of North Dakota that were given to secure the payment of three principal notes, amounting in the aggregate to $32,000, and certain interest notes. The mortgages in question were executed by the appellant in favor of the appellee on June 20, 1893. One of the mortgages was in the ordinary form; the other was in the form of an absolute conveyance. The latter instrument conveyed to the appellee an undivided one-half interest in certain lands which the appellant and appellee owned as tenants in common; but the bill stated that it was in fact a mortgage, which had been given to secure a part of the aforesaid mortgage debt, and it prayed for a decree foreclosing the appellant's equity of redemption therein.

The defendant below filed an answer and a cross bill, whereby he resisted a decree of foreclosure, and sought to have the mortgage and the mortgage notes canceled on the ground that they had been executed under duress, or by means of undue influence. The material allegations in this respect which were contained in the answer and also in the cross bill as the ground for the affirmative relief therein prayed for were substantially as follows: The defendant below alleged that he had acted as agent for the plaintiff, Edwin Morris, from 1883 until June 20, 1893, in loaning and investing money for the plaintiff; that from January, 1888, until January 31, 1891, the plaintiff and the defendant had also been copartners in the banking business at Fargo, N. D.; that the banking business was discontinued on January 31, 1891, but that the firm was not dissolved until June 20, 1893; that the assets of the firm then consisted of money, notes, credits, book accounts, and other property, both real and personal, which was of great value; that the defendant had the sole control of the assets of the firm, after the discontinuance of the banking business, until June 20, 1893; that during the existence of the copartnership the defendant had continued to act, as before, as agent of the plaintiff in the matter of loaning and investing the latter's money; that from 1883 to June 20, 1893, the plaintiff and defendant had never had a final settlement, and that such settlement at the latter date involved an intricate and careful accounting.

Besides the foregoing averments, the answer and cross bill contained the following specific allegations, to wit: "That in said month of June, A. D. 1893, there was, and for some time prior thereto there had been, a financial crisis and money stringency existing throughout the United States, and that it was almost, if not quite, impossible for the defendant, or any other person, to realize immediately a large sum of money. That the defendant was then largely engaged in business of various kinds, and had a large amount of valuable property and assets, and had as well large liabilities; and that, in view of the matters and things aforesaid, the defendant, in said month of June, A. D. 1893, believed * * * that it was vital to the defendant's interests, financially and otherwise, to maintain the financial credit which he then enjoyed, and to prevent, if possible, the happening of any event calculated or liable to injure, damage, or impair his financial standing or credit. That the complainant, in said month of June, A. D. 1893, well knew the financial condition then existing, and of the great business depression incident thereto, and that the defendant was then engaged largely in business, having a large amount of valuable property and assets and large liabilities, and that it was then vitally important to the defendant to maintain his financial credit; and that in view of the facts so known to complainant, and in the said month of June, A. D. 1893, the said complainant unjustly, wrongfully, and in bad faith sought to take advantage of the existing facts and circumstances, and did

wrongfully and in bad faith take advantage of the said existing facts and circumstances in the matter of coercing the defendant into the making of an inequitable and unjust settlement of the said matters, accounts, and things then in controversy between the defendant and the complainant, and into the making of a settlement by which the complainant should have and receive a larger share and proportion of property, or its equivalent in money, than he was justly entitled to upon a fair and equitable settlement. That during the negotiations between the defendant and the complainant for and as to a final settlement of the matters and things aforesaid the complainant evidenced toward the defendant in many ways a hostile and malicious state of mind, to such an extent that the defendant had good cause and reasonable ground to believe, and did then believe, that the complainant was in such an unfriendly and malicious condition of mind towards the defendant that he would in some way or manner injure and damage the defendant by statements and declarations calculated to affect and injure the defendant's financial standing and credit. That the defendant's financial standing and credit at said time was sound and good, but that the defendant then believed that any false or scandalous statements made against the defendant's financial standing and credit, or any attack whatever against the same, particularly by the complainant, who had for such a long time sustained business relations with the defendant, would at that particular time, and under the peculiar conditions and circumstances then existing, greatly damage the defendant, if not utterly ruin him, by rendering it impossible for him to raise money with which to meet his liabilities, except at a large and great sacrifice of property, both real and personal, and by rendering the defendant liable to be then called upon for payments of money that otherwise would not then be demanded. That in the said month of June, A. D. 1893, the complainant, with full knowledge of said financial condition and business depression of the country at large, did threaten to institute an action in equity against the defendant for the purpose of securing an accounting and settlement of the said matters, accounts, and things then unsettled, and to pray in said action the appointment of a receiver over and of the property and assets of said copartnership, and over and of all of the property in the possession or control of the defendant in which the complainant then had an interest. That the said threat was made by the said complainant for the sole purpose of enforcing and obtaining an unfair and unjust settlement of the accounts, matters, and things aforesaid. That the defendant then believed that unless he should at once make a settlement with the complainant of such accounts, matters, and things, that the complainant would carry out his said threats, and would institute such action in equity; and that the institution of the same at said time might, and probably would, irreparably injure and damage, and possibly financially ruin, the defendant. That in order to prevent the institution of such an action by the complainant, and in order to prevent the complainant from saying or doing anything at said time or while said financial depression continued that might or could by any possibility impair or injure the defendant's financial standing or credit, the defendant determined that he would make such final settlement of the accounts, matters, and things aforesaid as was then demanded and insisted upon by the complainant, although, in the opinion of the defendant, the same was unjust and unfair, provided the complainant would expressly promise and engage that he would not then and thereafter say or do anything that could by any possibility impair or injure the financial standing or credit of the defendant. That on the said 20th day of June, A. D. 1893, the defendant, for and in consideration of the promise made by the complainant to him that he, the complainant, would not in any way or manner say or do anything affecting or which might or could affect the financial standing, integrity, or credit of the defendant, or which would have a natural tendency so to do, or say or do anything reflecting upon, or which could by any possibility be deemed by any person or persons as reflecting upon, the sound financial standing, integrity, or condition of the defendant then or thereafter, or in any way or manner then or thereafter impugn the fairness or good faith of the defendant in making a final settlement with said complainant of and concerning all matters and things connected with said agency, copartnership, and ownership of lands, and of all matters and things then in dispute between the defendant and the complain-

ant, concluded and effected a full and complete settlement in writing with said complainant of all matters and things connected with and arising out of said agency, copartnership, and ownership of lands, the same being in fact a final settlement of all accounts, matters, and things then in dispute or otherwise between the defendant and the complainant, connected with or arising out of said agency, copartnership, and ownership of lands, and of all the interests, rights, claims, and demands of the defendant and complainant upon or with respect to each other, their several heirs, executors, administrators, and assigns."

The bill next averred, in substance, that the mortgages sought to be foreclosed in the present suit where executed as a part of said final settlement, and to carry out the terms and provisions thereof. The answer and cross bill also contained the following specific allegations, to wit: "That all of the property, both real and personal, which by the terms of said settlement was to become the property of the defendant, was so valued by the defendant, for the purpose of said final settlement, far above its actual value, and that a large part of said property, which by the terms of said settlement the defendant was to take and own for his own use and benefit, has since the execution and making of said final settlement greatly depreciated in value, and that none of said property so taken by the defendant has appreciated over and above such estimated values. That the complainant, in violation of his said promise and agreement, after making said settlement with the defendant, and subsequent to the delivery to him of the said promissory notes, mortgages, and conveyance, frequently, openly, and willfully attacked the financial credit, integrity, and standing of the defendant by statements and declarations made by him, the said complainant, to divers persons residing and being in the state of North Dakota, with respect to the financial standing, integrity, and condition of the defendant, in and by which said statements the said complainant alleged and declared that the defendant was financially irresponsible, that all of the property of the defendant was heavily incumbered, and that the defendant was financially bankrupt and insolvent; and that the complainant further, by declarations to third persons, frequently impugned the honesty and good faith of the defendant as to and in the making of said final settlement, and thereby violated and failed to keep and perform his said promise, to the great and irremediable damage of the defendant. That not only has the defendant suffered and sustained irremediable damages by reason of the violation of such promise and agreement by the complainant, but that the said violation by the complainant of his said agreement was in a large measure, if not solely, the reason for the defendant's inability to raise money and funds with which to pay those certain interest coupon notes which matured and became due, according to their terms, on the 20th day of June, A. D. 1894. That by reason of the defendant's failure and inability to pay said interest coupon notes when due, to wit, on the 20th day of June, A. D. 1894, the complainant did, on the 28th day of June, A. D. 1894, serve upon the defendant written notice of his election and intention to declare the whole sum secured by said mortgage and otherwise as aforesaid to be due and payable. That the violation of the complainant's said agreement, coupled with the financial depression existing at the time, and which the defendant and the complainant had in mind and in view at the time when the defendant stipulated for and exacted such promise from the complainant, to wit, at the time of the making of said settlement, rendered the defendant unable to pay the said coupon interest notes which matured on the said 20th day of June, A. D. 1894, and resulted in the demand made upon the defendant by the complainant for the payment forthwith of the whole sum of $32,000, together with interest thereon during a continuance of said financial depression, and at a time when it was and is utterly impossible for the defendant to realize and pay such a sum of money, except, if at all, by the sale of real and personal property at great loss, sacrifice, and damage to the defendant. That by reason of said statements and declarations so made by the said complainant to divers persons, the sole consideration moving from the complainant to the defendant or received by the defendant for the execution and delivery of the said several instruments, and each of them, and for the making of said final settlement, has wholly and utterly failed. That the sole purpose and object of the defendant in making said final settle-

ment has been and was defeated by reason of said statements and declarations so made by complainant. That, but for the said promise of the complainant, the defendant would never have agreed to pay to the complainant the sum of $32,000, or any other sum, until all the actual value of all the property involved in said settlement had been ascertained and determined either by agreement or judicial determination, and the true amount to which the said complainant was entitled, if any, had been thus, or in some other way, accurately and truly ascertained and determined."

The complainant below filed a replication to the aforesaid answer and a demurrer to the cross bill, which demurrer was sustained, and thereupon an order was entered dismissing the cross bill. Subsequently the case was referred to a master, with directions to report to the court separately his findings of fact and conclusions of law upon the issues raised by the bill, answer and replication. On the coming in of the master's report, the same was confirmed, and a decree was entered in accordance with the recommendation of the master, foreclosing both mortgages, and directing a sale of the property therein described for the satisfaction of the mortgage debt. The case comes to this court on an appeal taken by the defendant from the decree of foreclosure, and also on an appeal from the order sustaining the demurrer to the cross bill and dismissing the same.

W. P. Miller (Charles E. Flandrau, with him on brief), for appellant.

Charles F. Amidon (John D. Benton, with him on brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The record shows that on the hearing before the master and in the circuit court no evidence was offered by the defendant, Charles A. Morton, tending to support any of the allegations of his answer, although a replication thereto was duly filed. The contention in behalf of the defendant seems to have been that, because the complainant had demurred to the cross bill, and the same had been sustained, the demurrer operated as a conclusive admission of all the facts pleaded in the answer as well as in the cross bill, and that it was, therefore, unnecessary to offer any proof for the purpose of establishing the averments of the answer. We do not find it necessary on the present occasion to decide whether this view regarding the effect of the demurrer is well founded or otherwise, for, even if the demurrer operated as an admission of the facts stated in the answer as well as in the cross bill, it was only an admission of such facts as were well pleaded, and the facts so pleaded, taken altogether, were insufficient, in our judgment, either to warrant a decree in favor of the defendant on his cross bill, or to justify the circuit court in refusing the relief prayed for by the plaintiff in his bill of complaint.

It was shown by the averments contained in the defendant's answer and cross bill that on June 20, 1893, there was an unsettled account between the parties to the suit, growing out of previous business transactions which had extended over a period of 10 years, and that the defendant, who had acted throughout the entire period as agent for the plaintiff in loaning money, and for a portion of the time as his copartner in the banking business, was largely in-

debted to the plaintiff by reason of such relations and transactions. Under these circumstances, the plaintiff had an undoubted right to call upon the defendant for a settlement and an accounting, and to enforce the demand by a suit in equity if a settlement was either deferred or refused. And, inasmuch as the affairs of the copartnership remained open and unadjusted, the plaintiff also had the right to ask for the appointment of a receiver of the property of the firm if he and his copartner failed to agree upon a division thereof, or as to the proper custody of the same, pending an adjustment of the partnership affairs. The only threat complained of in the answer and in the cross bill which appears to have been at any time made by the plaintiff was a threat to bring a suit to enforce a settlement and an accounting if an amicable adjustment was not reached, and, such being the case, we fail to see that the agreement of June 20, 1893, under and in pursuance of which the mortgage and mortgage notes were executed, was brought about by any such unlawful or unfair means as will serve to render the agreement voidable, either in a court of law or equity. In a legal sense, a person cannot be said to have taken an undue advantage of another, or to have done any wrong, when he merely threatens to enforce his rights by a civil action in the ordinary form. On the argument of the case some stress was laid on the averments contained in the answer to the effect that the defendant was called upon for a settlement when he was largely in debt, and when the times were unpropitious: also on the averment that the demand was made at that time by the plaintiff in bad faith, to coerce an inequitable settlement. These averments are not sufficient, in our opinion, to entitle the defendant to equitable relief. In the world of business it is usually the case that men are most urgently pressed to pay their debts when they are deeply involved, and the times are stringent, or when a financial panic is imminent. On such occasions the instinct of self-preservation often compels creditors to be more prompt and persistent, if not more exacting, in enforcing their demands, than they would be under other conditions. It is highly creditable to a man, no doubt, if he can so far overcome the dictates of self-interest as to be indulgent to his honest debtors in times of great business depression, but we are unable to say that it is a creditor's legal duty to be thus lenient when the times are hard, or to defer pressing for a settlement of his claims until a more convenient season. Nor are we able to say that in the forum of equity a creditor should be adjudged guilty of such unconscionable conduct as will vitiate securities taken from his debtor to secure a bona fide indebtedness, merely because he saw fit to insist upon a settlement when values were declining, and when it was most inconvenient for the debtor to meet his obligations.

With reference to the allegation contained in the answer and cross bill that the demand for an accounting was made in bad faith, to coerce an unjust settlement, it is only necessary to say that, inasmuch as the acts done and performed by the complainant were clearly lawful, we fail to perceive that the motives which may

have prompted him to demand a settlement and an accounting are at all material. The intent which actuates a creditor in seeking to enforce a legal claim or demand is ordinarily of no concern to the debtor, and is not a matter for judicial inquiry. The latter is only entitled to complain when some act is done or threatened by the creditor which is, in itself, unlawful, or is contrary to equity. In the present case the acts charged in the answer as the basis for relief consisted in a demand made by the plaintiff for an accounting and settlement when the defendant was in embarrassed circumstances, and in a threat to enforce such demand by a civil action. Neither of these acts was unlawful, or so far harsh, oppressive, or unconscionable as to vitiate the settlement subsequently made. Silliman v. U. S., 101 U. S. 465; Hackley v. Headley, 45 Mich. 569, 8 N. W. 511; Snyder v. Braden, 58 Ind. 143; Dunham v. Griswold, 100 N. Y. 224, 3 N. E. 76; Fuller v. Roberts (Fla.) 17 South. 359; McClair v. Wilson, 18 Colo. 82, 31 Pac. 502; Farmer v. Walter, 2 Edw. Ch. 601; Skeate v. Beale, 11 Adol. & E. 983; Wilcox v. Howland, 23 Pick. 167.

It should be further noted that it does not appear from the allegations of the defendant's answer and cross bill, with the requisite certainty, that the settlement eventually agreed to was in any respect unjust and unfair. The answer contains the averment "that in the opinion of the defendant, the [settlement] was unjust and unfair," and the further averment "that all the property, both real and personal, which by the terms of said settlement was to become the property of the defendant, was  *  *  *  valued by the defendant, for the purpose of said final settlement, far above its actual value, and that a large part of said property which by the terms of said settlement the defendant was to take and own for his own use and benefit has since the execution and making of said final settlement greatly depreciated in value, and that none of said property so taken by the defendant has appreciated over and above such estimated values"; but to what extent, in dollars and cents, the property in question was overvalued, is not stated; neither is it averred that the plaintiff was solely instrumental in causing such overvaluation. On the contrary, inasmuch as the plaintiff was a resident of the province of Ontario, Canada, while the defendant was a resident of the state of North Dakota, and had made all of the investments in that state, it is fair to presume, as the allegations of the answer and cross bill would seem to imply, that the defendant had more to do with placing values on the property that figured in the settlement than the complainant. At all events, the allegations of the answer in this respect are so general and indefinite that they fail to satisfy us that when the plaintiff called upon the defendant for a settlement, he first placed an exaggerated value on the property to be divided, and then took advantage of the defendant's necessities to compel him to take an undue proportion thereof at such exaggerated valuation.

Some other questions are discussed in the briefs of counsel, which have been duly considered, but, in our judgment, they are

not of sufficient importance to justify special mention.    It results from the foregoing views that the decree of the circuit court was for the right party, and ought not to be disturbed.

We have been asked by counsel for the appellee to affirm the decree of the circuit court with 10 per cent. damages, in accordance with subdivision 2 of rule 30 of this court (11 C. C. A. cxii., 47 Fed. xiii.), on the ground that the appeal was taken merely for delay. We think, however, that the case is not one which would justify an allowance of damages.    In lieu thereof an order will be entered affirming the decree, and directing the mandate to issue at the expiration of 10 days.