[No. 7790.   Decided March 30, 1909.]

WALLA WALLA FIRE INSURANCE COMPANY, *Appellant*, v.
CHARLES H. SPENCER *et al.*, *Respondents.*[1]

COMPROMISE AND SETTLEMENT—VALIDITY—CANCELLATION—DURESS
—EVIDENCE—SUFFICIENCY.  A compromise whereby an insurance com-
pany paid its agent $5,000 cash and gave notes for $15,000, in con-
sideration of the surrender of stock and of an agreement for the
agent's employment covering a long term of years, cannot be can-
celled for duress in that the agent threatened litigation on account of
his discharge and the appointment of a receiver, at a time when the
company was in disfavor, where the parties dealt at arm's length,
both had the advice of counsel, the compromise was ratified by the di-
rectors of the company, and no demand was made or steps taken to
cancel the notes until after the lapse of six months; a threat of
litigation or buying one's peace not ordinarily being duress.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered July 3, 1908, upon findings in
favor of the defendants, after a trial on the merits before
the court without a jury, in an action to cancel promissory
notes, and for damages.   Affirmed.

*F. E. Holloway* (*John D. Fletcher* and *Ellis, Fletcher &
Evans*, of counsel), for appellant.

*Rufus J. Burglehaus* and *Emmett N. Parker*, for respond-
ents.

CHADWICK, J.—Prior to January 26, 1907, defendant
Charles H. Spencer was engaged in the insurance business in
the city of Seattle, where he controlled and operated the
Merchants Fire Association.   About that time C. K. Hollo-
way and others had organized the Walla Walla Fire Insur-
ance Company, with its principal place of business at Walla
Walla.   The latter company was in need of a manager
experienced in the promotion of new insurance companies.
After some negotiations, extending over a period of some

[1]Reported in 100 Pac. 741.

24—52 WASH.

six weeks, appellant bought the business of the Merchants Fire Association, assumed its outstanding risks, and as a part of the transaction, employed Charles H. Spencer as its secretary. As an inducement to the trade, fifty shares of stock were issued in the name of the defendant Ellen M. Spencer, and delivered to defendant Charles H. Spencer, who held it for her. On February 1, 1907, Spencer assumed his duties as secretary of the appellant company at Walla Walla. The business of the company seems to have progressed to the satisfaction of all parties. On June 13, 1907, the company, being desirous of extending its business throughout the middle western states, entered into an agreement with Charles H. Spencer, wherein it was stipulated that the company would open a branch office at the city of Chicago, and that Spencer should be the manager and receive a salary of $5,000 during the life of the contract, which terminated on the 30th day of June, 1917. It was also agreed that, in consideration of the cancellation of the contract theretofore existing between the parties, Spencer should receive the sum of $5,000 in addition to his salary and expenses from the 1st day of July, 1907, to January 1, 1908. It was further provided that default on the part of Spencer, "in the performance of any of his duties, conditions or limitations herein agreed and undertaken, shall be deemed as good and sufficient cause for the termination of this agreement by the first party, who shall and does hereby reserve the option in such instance to terminate and annul this contract in case the party of the first part elects so to do." There was also a stipulation in the contract that Spencer should have the sole right to hire and discharge all necessary help.

At the time the contract was entered into, Mr. Holloway, the managing director of the plaintiff, had some oral understanding with Spencer that he would not employ his son, L. E. Spencer, in any capacity whatever, in or about the business to be established at Chicago. After Spencer had opened his office in Chicago, he wrote Holloway, saying that because

of family reasons he was compelled to break his promise, and had employed his son as a special agent of the company. He further justified himself by reference to his contract, which gave him exclusive right to employ and discharge such help as he desired. After a season of somewhat recriminatory correspondence, Holloway wrote Spencer, saying that his services were dispensed with, and ordering him to turn his office over to another. This letter was not received by Spencer until after the 12th day of October, 1907. It had been addressed to Spencer at Seattle, where he then was attending to some litigation against the Merchants Fire Association. Spencer arrived in Walla Walla on the 12th day of October, when he learned for the first time that he had been discharged. Spencer insisted that he be paid the value of his contract, and for fifty shares of the capital stock of the company then standing in the name of respondent Ellen M. Spencer. After some negotiations, a contract was drawn up and signed by the parties, wherein it was agreed that, in full compromise of all differences, plaintiff would pay to Spencer the sum of $5,000 in cash, and $15,000 to be paid in six, nine, and twelve months after date, for which plaintiff executed and delivered its three certain promissory notes for $5,000 each. This action was brought to cancel the notes and to recover damages. From findings of fact and decree in favor of defendants, plaintiff has appealed.

The ground upon which appellant bases its claim for cancellation of the agreement of October 12, 1907, and the notes executed in accordance therewith, is that the respondent Charles H. Spencer fraudulently took advantage of the then situation of the company—appellant was in disfavor with the insurance departments of several states, and was the subject of hostile criticism by the insurance press of the East— by threats of litigation, and that he would immediately proceed to put the company in the hands of a receiver if it did not execute and deliver the notes now sought to be cancelled.

No useful purpose would be served by a critical review of

the testimony.   It is enough to say that, according to the
statements of the company published about the time the con-
tract was entered into, the contract and stock of the respond-
ents was of considerable value.   Both parties had ample op-
portunity to consult counsel, and both were advised.   They
were dealing at arm's length.   The compromise agreement
was not hastily entered into.   The terms of settlement were
considered and ratified by a part of the directors of appellant
on October 12; and later, some question having been sug-
gested by the attorney for Mr. Spencer as to the formality
of the meeting of the directors on October 12, a meeting was
held on October 16, when the matter was again before the
board of directors, and the following proceedings were had:

"Minutes of special meeting of the board of trustees of
the Walla Walla Fire Insurance Company held at the office
of the company at 2: 00 p. m., Wednesday, October 16, 1907.

"The meeting was an adjourned meeting called by the
president pursuant to a notice given in the manner provided
in the by-laws of said company on Saturday, October 12,
1907, for Tuesday, October 15th.   There being no quorum
present at the hour fixed for said meeting, upon motion, said
meeting was duly adjourned until October 16, 1907, at the
hour of 2:00 p. m., and notices of said adjourned meeting
were mailed upon order of the vice president to all of the
trustees at their last known postoffice address.   The president
called the meeting to order with trustees Barnett and Smalley
in attendance, and upon motion duly seconded, the board
ratified the action of the meeting of trustees held on Oct.
12, 1907, approving the execution on the part of the pres-
ident and assistant secretary of the contract, which is fully
set out in the minute record of the company on pages No.
34 and No. 35 thereof.   On motion duly seconded, the trustees
further approved the minutes of the meeting of trustees, held
on Oct. 12, 1907.   On motion duly seconded, the minutes of
this meeting as read by the assistant secretary were ap-
proved."

The new agent in Chicago was advised that all differences
with Spencer had been adjusted.   The money was paid to
Spencer and the notes delivered  in consideration of the sur-

render of the contract of June 13, 1907, and Mrs. Spencer's stock at Chicago, on October 23, ten days after the contract had been entered into. This action was brought April 7, 1908. Between October and April appellant took no steps to undo the wrong it now asserts, and prior to the commencement of this action made no demand on Spencer. Under these circumstances it is elementary that a contract cannot be avoided on the ground of duress.

Appellant relies principally upon the case of *Rose v. Owen* (Ind. App.), 85 N. E. 129. That case is in some respects very like the one before us. It in our judgment carries the rule beyond reasonable limits. The learned judge who wrote the opinion, after stating the law as follows:

"The injury feared would result if the receivership action was instituted regardless of the merits of the case. Whatever defenses appellee or said company might have would be unavailable to avert the threatened injury since it must result before such defense could be interposed;"

says:

"A contract made under duress is voidable at the election of the party coerced, provided the contract be not ratified, and the election is made within a reasonable time."

The proviso he makes should have been applied as the law of the case, for the transaction which then engaged his attention was certainly ratified, not as completely, but as effectually as the contract was ratified in this case. Dangerous, indeed, would be the doctrine that contracts could be repudiated at will, when entered into by competent and capable men of comprehensive experience and sound judgment. If, in fact, they became the victims of duress, they cannot at the same time ratify, and bide their pleasure to disavow their act. A threat of litigation by one who has a legal right to sue, is not generally held to be duress within the meaning of the law. Certainly Spencer had the privilege of litigating the right of appellant to break its contract. All compromise contracts partake to a greater or less extent of coercion. The one party or the other will yield his contention to avoid a law-

suit.   To buy one's peace is not duress within the ordinary definition of the term.

"Duress is that degree of severity, either threatened and impending, or actually inflicted, which is sufficient to overcome the mind and will of a person of ordinary firmness." 2 Greenleaf, Evidence, § 301.

The record shows that appellant acted, not because of duress but voluntarily, and that the settlement was regarded at the time as beneficial.   The following authorities sustain our conclusion:   *McClair v. Wilson*, 18 Colo. 82, 31 Pac. 502; *Holt v. Thomas*, 105 Cal. 273, 38 Pac. 891; *Silliman v. United States*, 101 U. S. 465, 25 L. Ed. 987; *Hackley v. Headley*, 45 Mich. 569, 8 N. W. 511; *Hilborn v. Bucknam*, 78 Me. 482, 7 Atl. 272, 57 Am. Rep. 816; *Heysham v. Dettre*, 89 Pa. St. 506.

The judgment is affirmed.

RUDKIN, C. J., MOUNT, CROW, FULLERTON, and GOSE, JJ., concur.

DUNBAR, J., took no part.

PARKER, J., having been of counsel, took no part.