**MERMIS v. WALDO et al.**

**No. 1517.**

Circuit Court of Appeals, Tenth Circuit.
July 26, 1937.

C. A. Magaw, of Omaha, Neb. (E. J. Malone, of Hays, Kan., and Thomas F. Doran, Clayton E. Kline, and M. F. Cosgrove, all of Topeka, Kan., on brief), for appellant.

John H. Hunt, of Topeka, Kan. (W. R. Griffin, of Ellis, Kan., and John L. Hunt, of Topeka, Kan., on brief), for appellees.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

The First National Bank of Ellis, Kan., a national banking corporation, organized under the laws of the United States, became insolvent and suspended business on or about March 4, 1933, when it was placed in the custody of a conservator who continued in such capacity until receiver was appointed, qualified, and assumed charge on August 23, 1933.

This action was instituted by said Receiver Richard A. Mermis, as plaintiff, against E. C. Waldo, Guy L. Waldo, and Betty Waldo Reed, partners engaged in the retail hardware business in Ellis, Kan., to recover on a promissory note of $3,099.39, dated May 3, 1934, payable to the order of said bank. The said E. C. Waldo and Guy L. Waldo entered their voluntary appearance in said action, waiving issuance and service of summons. Betty Waldo Reed, a resident of the City of Dallas, State of Texas, having not been served with process, made no appearance.

E. C. Waldo and Guy L. Waldo answered, alleging that the said bank and all other creditors of Waldo & Waldo had, prior to November 1, 1932, entered into an agreement by which all creditors agreed to accept 33⅓ per cent. of their claims, as a compromise settlement; that on November 27, 1933, the Kansas City Association of Credit Men, through its adjustment bureau, sent to the various creditors of Waldo & Waldo, a dividend check for 19 per cent. of the bank's claim, and on May 3, 1934, a dividend check for 14⅓ per cent.; that checks for such dividends were received and accepted by the receiver; further that the note sued on was without consideration and was entered into under duress, and obtained for the purpose of preferring the bank in fraud and to the injury of the other creditors.

The evidence is that in December, 1932, Cromb, president of said bank, in the presence of E. C. and Guy L. Waldo, and Ruehaak, cashier of the bank, stated to Gooch, as a representative of Richards & Conover Company, and Kansas City Association of Credit Men, that the bank would accept the compromise settlement (referring to the 33⅓ per cent. cash compromise), in event all creditors accepted same, but Waldo & Waldo did not provide all the money to pay said 33⅓ per cent. cash payment, until November or December, 1933.

There is no evidence that Cromb, as president, either verbally or otherwise, for the bank ever agreed for any time, beyond a reasonable time from December, 1932, in which to provide the 33⅓ per cent. for such compromise; the proposition verbally accepted in December, 1932, being that all the creditors accept 33⅓ per cent. as full settlement of their claims, whatever same happened to be against the firm of Waldo & Waldo, and that meant within a reasonable time from that date.

Neither conservator nor receiver ever approved or otherwise consented to said compromise or any extension of time.

Said receiver declined to give his acceptance, approval, or consent on the ground he did not have such authority from the Comptroller of the Currency, nor did the conservator.

From the general letter submitted on August 29, 1933, by Kansas City Credit Men's Association to the creditors, it is evident that they did not then understand that the First National Bank of Ellis, Kan., had entered into a contract that was effective with them and Richard & Conover prior to the time of the appointment and qualification of the conservator on March 4 or 5, 1933, and appointment and qualification of the receiver on August 23, 1933, or at any time.

It is assumed, for the purpose of this case, without passing on the question, as it is not essential, that Cromb, the president of the bank, verbally without any authorization from the board of directors, had authority, acting as president, to enter into such compromise verbal agreement on the part of the bank, for the evidence without contradiction in this record shows that such proposed compromise was not agreed to *by all of the* creditors prior to appointment and qualification of receiver or conservator, or thereafter.

A letter sent out by the Kansas City Credit Men's Association on November 3, 1933, to said receiver containing a form of acceptance for said receiver, stated that all except three creditors with exceedingly small claims had then accepted the proposed settlement, and that the money (referring to $3,000 constituting 19 per cent. of the proposed compromise) then held in escrow could be distributed as soon as they had said receiver's consent.

This disclosed that all creditors had not accepted and that there had not been an effective acceptance on the part of the bank or conservator or receiver or Comptroller of the Currency.

In letter from said Credit Association to said receiver, dated January 5, 1934, it is stated: "At the suggestion of Mr. Waldo, disbursement of the money in escrow was made to apply on the 33⅓% offered and, following his instructions, we sent check covering your pro rata *to him* (italics mine)" and (which was identified in this record as Exhibit A, covering only 19 per cent. of said 33⅓ per cent., and was not sent to the receiver, as it was evidently understood that neither the bank nor the receiver had then accepted the compromise). Likewise the 14⅓ per cent. of said 33⅓ per cent., which was represented by check identified as Exhibit B, was also some time later sent to said E. C. Waldo and not to the receiver. It is stated in said statement mailed by Adjustment Bureau of Kansas City Business Men's Association to creditors under date of August 29, 1933, that Waldo, evidently the elder, has placed $3,000 with them in escrow, which is available for immediate distribution, as soon as all creditors agree to the settlement, showing that neither the bank nor the three small creditors were regarded as having agreed to such proposition, but that this constituted an amended compromise plan, and it is further stated that "he hopes there will be quick response," and further that, "It is understood by us that this shall not be binding unless all creditors accept the settlement as offered," and that as soon as all creditors agree, the said $3,000 will be distributed (which represented the 19 per cent.), and the balance of the 33⅓ per cent., to wit, 14⅓ per cent. thereof, "shall be made available within 120 days" from that date, which was August 29, 1933. So the conditions, "if all creditors would accept such compromise of 33⅓%," imposed by Cromb verbally for the bank in December, 1932, were not met.

Nothing in the record shows that Cromb or any one for the bank ever agreed to such modification or amendment of the proposed compromise plan by extension until December 27, 1933, for compliance therewith, which was never presented to the receiver until November 3, 1933.

The case was tried in the court below on the theory that the burden rested on the defendants. The court so held, and both sides acquiesced therein.

The first check, Exhibit A, dated November 27, 1933, 19 per cent. dividend, and second check, Exhibit B, dated May 3, 1934, both delivered by the elder Waldo (E. C. Waldo), and the note signed by the said E. C. Waldo, and the younger Waldo, Guy L. Waldo, in the sum of $3,099.39, and $64 in cash for interest that had not been included in said note, all as a part of and consummating one transaction between the receiver and E. C. and Guy Waldo, distinct and separate from the compromise proposed in December, 1932, were then about Au-

gust 8, 9, or 10, 1934, delivered by said E. C. and Guy Waldo to the receiver.

The receiver, whilst on the witness stand, testified as follows:

"The sum of Exhibits A and B, together with the note I received, covered the entire indebtedness of Waldo & Waldo to the bank with the exception of accrued interest amounting to $64.00, which they paid in cash. The interest was figured to the date I received authority from the department to settle, which was some time in May.

"I never agreed with Waldo & Waldo or any member of that firm that the bank or myself as its Receiver and representative would accept less than the full face of the indebtedness. The amount stated in the petition filed by me in this case is the correct balance due. The note on which this suit is brought is the one I received from Waldo & Waldo on the 10th of August, 1934. It is dated the 3rd day of May, 1934, is for $3,099.39, and is signed by Guy Waldo and E. C. Waldo.

"The typewritten indorsement was on the back of defendants' Exhibit B when I received it. I called Mr. Waldo's attention to that notation on this check, and of course, there was a question whether I should endorse it. Mr. Waldo said: 'Go ahead and take it, because we have settled this thing and I have given you a note for the balance and there won't be any question.' I told Mr. Waldo that the way this endorsement was made, I did not know whether it was correct or not, and I asked him to strike it out. He said 'if you strike it out, they might not honor the check at Kansas City' and that is the reason I endorsed the check in the manner in which it is endorsed."

So prior to the time the checks were indorsed by the receiver, the note for $3,099.39 and the cash for $64 had been delivered by E. C. Waldo and Guy Waldo to the receiver. Waldo & Waldo had possession of these checks A and B, having some time prior thereto received them direct from the Kansas City Credit Men's Association.

The Comptroller of the Currency had authorized the receiver in writing to petition the state district court for an order permitting him to accept in cash not less than 33⅓ per cent. of the total principal and interest due on assets 234 to 236, which were the three notes held by the bank against Waldo & Waldo, up to the date

of settlement, and a valid, negotiable obligation of E. C. Waldo for the payment of the principal remaining due with interest at 6 per cent. per annum after the date of settlement, all in full settlement of these three notes of Waldo & Waldo. Such authorization had been by said receiver procured from said court, and in closing out this transaction with Waldo & Waldo, he was acting under specific authorization of the Comptroller of the Currency.

This evidence on the part of the receiver was not denied by E. C. Waldo or Guy L. Waldo. E. C. Waldo took the witness stand, but nothing in his evidence materially conflicts therewith and Guy Waldo did not take the witness stand.

E. C. Waldo, on direct examination, positively denied that check B was delivered to him or was ever in his possession, but later on admitted that it had been in his possession, and that he delivered same to the receiver.

This transaction took place about August 8, 9, or 10, 1933. Receiver testified he thought it was on August 10th, but the checks were marked paid through the bank on August 9th. The receiver was testifying from recollection as to the date. It is not material whether that transaction took place on August 8th, 9th, or 10th.

The payment to the receiver was by checks A and B aggregating $1,787.02, and the note for $3,099.39 and also $64 cash for accrued interest not covered by the terms of the note.

As to these facts, there is no material conflict in the evidence when all the competent evidence is considered.

The receiver denied that he stated to Waldo that he was "going to roll them over or prosecute them or put them in receivership or anything of the kind," but he told them he had to collect the notes and would like to make some kind of arrangements whereby he could get them liquidated and said he did not tell Waldo that if he did not sign the note he would put him in receivership, but it was Waldo's proposition made prior to that time which caused him to get authority from the Comptroller of the Currency that if he would accept the 33⅓ per cent., that he would give the note for the balance at 6 per cent. per annum, and that Waldo would like to get the interest waived, and that the Comptroller of the Currency declined to permit him to waive the interest, and that he

never told Waldo that if he did not sign the note, he would put the firm of Waldo & Waldo into receivership, and he did not threaten him in any way, to get him to sign the note.

On cross-examination, the receiver testified that prior to this settlement, he had brought a receivership suit against Ross & Waldo and one against Waldo & Waldo, one of which was then pending, and the other had been dismissed, and that he would not say that he never asked Mr. Waldo to give a note, and that it probably entered into the conversation about the note or he would not have it, and that after he got the authority, he had asked Waldo to give the note.

As to duress, E. C. Waldo testified: "Q. (By Mr. Hunt) What occurred; did he ever talk receivership to you, Mr. Mermis? A. Yes, sir. * * * he indicated if we didn't do what he demanded, he would roll us over in the business, also the firm of Ross and Waldo, and it would have a bad influence to our being stockholders in the First National Bank.

"Q. (By Mr. Hunt) You say he indicated?

"Mr. Doran: Wait a minute. You wouldn't let me put in my objection. I object to this as a selfserving declaration. I object to the answer because it says that it 'indicated,' stating a conclusion of the witness.

"The Court: That part will be sustained. Is that what he said, Mr. Waldo, or substantially that?

"The Witness: A. Well, it amounted to that, and his exact words would indicate that he was going to bring pressure onto us unless we done this thing.

"Mr. Doran: I object to all this declaration.

"The Court: State what his exact words were, and if you can't state the exact words, state in substance. * * * What do you mean by 'indicated'?

' "The Witness: A. He told us that to keep out of trouble, we better sign the note and we done a lot of hesitating about signing the note. I think for a period of two days. We refused to sign the note because we regarded the note as satisfied, the same as about fifteen other claims that was being handled by the Kansas City Credit Men's Association. Wouldn't be fair to pay them more than somebody else since

that was all in the compromise. Mr. Mermis said that it would complicate our business if we didn't proceed to do as he requested."

Plea of duress was not sustained. Atkinson et al. v. Allen et al., 71 F. 58, 17 C. C.A. 570; Dunham v. Griswold, 100 N.Y. 224, 3 N.E. 76; Snyder et ux. v. Braden, 58 Ind. 143, 146; Walla Walla Fire Insurance Co. v. Spencer, 52 Wash. 369, 100 P. 741, and Sulzner v. Cappeau-Lemley & Miller Co., 234 Pa. 162, 83 A. 103, 39 L.R.A.(N.S.) 421.

The proposed compromise agreement was ineffective as to bank, conservator, or receiver, and same were not bound thereby.

Judgment of the lower court is reversed, with instructions to grant a new trial.