## Emily J. McAldon et al. v. Frank A. VanAlstine.

### Gen. No. 4,802.

1. DURESS—*defined*. Duress exists when one, by the unlawful act of another, is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will.

2. DURESS—*what does not constitute*. It is not unlawful for one person who has or thinks he has a demand against another, to tell that person that unless he complies with the demand he will institute suit against him and circulate reports of that fact, and this even though the person so threatened was at the time seeking election to public office and feared the effect of the resulting notoriety.

Bill in chancery. Appeal from the Circuit Court of Woodford county; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the April term, 1907. Reversed and remanded. Opinion filed August 6, 1907.

LIVINGSTON & BACH, for appellants.

E. J. RILEY and BARNES & MAGOON, for appellee.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Woodford county canceling two releases made by appellee of two mortgages belonging to appellant. Appellee filed his bill in chancery alleging that James McAldon, husband of appellant, Emily J. McAldon, was indebted to one C. O. McClellan in the sum of $1,100 in the form of two notes, one for $600 and the other for $500; that the $600 note was secured by a mortgage on real estate in El Paso and the $500 note was secured by a mortgage on real estate in Chicago; that James McAldon died on October 15, 1902, and that said mortgages became the property of Emily J. McAldon by his will; that the said mortgages were assigned and transferred to appellee for a valuable consideration, and that he is still the owner of said

notes and mortgages, and that said notes are due and unpaid; that on February 29, 1904, he was a candidate on the Republican ticket for the office of clerk of the Circuit Court of Woodford county and that about three weeks prior to the election to be. held on November 8, 1904, the agents and attorney of Emily J. McAldon informed him that unless he released the mortgages and notes they would cause suit to be commenced against him to procure the specific performance of an alleged contract whereby the life insurance policy of Emily McAldon was assigned and given to appellee long before he acquired the notes and mortgages, and whereby appellee was to release said mortgages and deliver up said notes, and that he never made any such contract; that about ten days prior to the election the agents and attorneys of Emily McAldon informed him that unless he released the mortgages they would cause to be circulated a report in the county that he had defrauded Emily J. McAldon out of the notes and mortgages; that appellee believed a falsehood circulated at that time when he would have no opportunity to let the truth be known (the election likely to be close), would cause his defeat; and that to keep the said agents and attorneys of Emily J. McAldon from circulating this falsehood, and from being defeated for office thereby, he released the said mortgages; that said notes have never been paid, and that he never received anything for delivering the said notes and mortgages. The bill prayed that the releases be canceled and he be decreed the owner of the notes and that in default of the payment of the amount due thereon, the mortgages be foreclosed.

A demurrer was filed to the bill, but was overruled and an answer filed, and a hearing was had before the chancellor, which resulted in a decree canceling the releases and declaring title to the notes in appellee. There are a number of errors assigned, but it is unnecessary to discuss any but the question as to whether

the facts and circumstances surrounding the releases of the mortgages amount to legal duress.

Duress exists when one, by the unlawful act of another, is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will. Justice Cooley, in Hackley v. Headley, 45 Mich. 569. It will be seen from this definition that the thing which induced appellee to make the release must be unlawful. We know of no rule of law which makes it unlawful for one person who has, or thinks he has, a demand against another, to tell that person unless he complies with the demand he will institute suit against him and circulate reports of that fact. There is no charge here that appellants used any illegal means or fraud, or that they threatened to do anything more than what they thought the demand warranted. It is the law that threat of civil legal proceedings is insufficient to constitute duress. Weber v. Kirkendall, 44 Neb. 766, 67 N. W. 35. The evidence also shows that appellee was not deprived of the exercise of his free will and that he was fully aware of all facts connected with the affair, and that he did exercise his free will in a very active manner, and did what he thought best at the time; and we cannot say that any prudent and wise man would not have done the same thing under like circumstances. Appellee contends that the fact that he was a candidate for public office, along with the other things, made the coercion, but this fact would not make the other acts unlawful. Appellants' attorneys, no doubt, thought the opportune time to press their demand was when appellee was running for office. Appellee consulted his friends, made financial estimates, and concluded to keep the policy on Mrs. McAldon's life, which was for $3,000, and to surrender the mortgages, which were for only $1,100. He acted with deliberation.

The action of appellee being voluntary, he is not entitled to the relief asked.

The decree of the Circuit Court will therefore be reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded.*