CHAS. H. HACKLEY AND JAS. MCGORDON v. JOHN HEADLEY.

*Logging contract—Scale—Expense of scaling—Usage—Duress.*

Where a lumberman, in contracting with his jobber for getting out logs, agrees to divide the expense of scaling them and the scaler stipulates that the jobber shall board him, the cost of boarding him is an item of the expense to be divided, and the lumberman is liable for half of it and cannot show that it is the custom of jobbers to board their scalers at their own expense. But if the scaler does not stipulate for his board the lumberman is not liable, and the transaction is between the jobber and scaler alone.

A contract for getting out logs to be scaled "in accordance with the standard rules or scales in general use" on the stream, is governed by the scale in use at the time of scaling.

Duress exists where one is induced, by another's unlawful act, to make a contract or perform some act under circumstances which prevent his

| 45 | 568 |
| 69 | 487 |
| 45 | 569 |
| 79 | 572 |
| 45 | 569 |
| 94 | 576 |
| 45 | 569 |
| 110 | 2 |
| 45 | 569 |
| 115 | 507 |
| 45 | 569 |
| d118 | 667 |
| 45 | 569 |
| 137 | $398 |
| 45 | 569 |
| h143 | 353 |

exercising free will. It is either of the person or the goods of the party constrained.

Duress of the person is by imprisonment, threats or an exhibition of apparently irresistible force.

Duress of goods may exist when one is compelled to submit to an illegal exaction in order to obtain them from one who has them but refuses to surrender them unless the exaction is endured.

There is no duress where the act threatened is nothing which the party has not a legal right to perform.

Refusal, on demand, to pay a debt that is due, thereby forcing the creditor to receipt in full for only a partial payment, does not constitute duress if the debtor has done nothing unlawful to cause the financial embarassment which compelled him to submit to the extortion.

A receipt obtained by improper means and assuming to discharge any indebtedness not honestly in dispute between the parties and known by the debtor to be owing, is to that extent without consideration and ineffectual.

Error to Kent.  Submitted Jan. 26.  Decided April 13.

Assumpsit.  Defendant brings error.  Reversed.

*Smith, Nims, Hoyt & Erwin* for plaintiffs in error. Duress is that degree of constraint that is sufficient to overcome the mind and will of a person of ordinary firmness: *Brown v. Pierce* 7 Wal. 214; as a defense it must be made in good faith and seasonably: *Lyon v. Waldo* 36 Mich. 356; *DeArmand v. Phillips* Wal. Ch. 199; a payment is not compulsory unless made to emancipate the person or property from an actual and existing duress imposed upon it by the party to whom it is made: *Radich v. Hutchins* 95 U. S. 213; it is not ordinarily duress to refuse to pay without litigation: *Mayhew v. Phœnix Ins. Co.* 23 Mich. 105.

*John C. FitzGerald* for defendant in error. Procuring a settlement of a debt by taking advantage of the creditor's financial embarassments is duress of goods; *Moses v. Macferlan* 2 Burr. 1005; *Irving v. Wilson* 4 D. & E. 485; there is no consideration for a receipt obtained by taking such advantage, to the extent to which it releases the debt: *Ryan*

*v. Ward* 48 N. Y. 206; *Harrison v. Close* 2 Johns. 448; *Seymour v. Minturn* 17 Johns. 170; *Mech. Bank v. Hazard* 9 Johns. 393; *Hendrickson v. Beers* 6 Bosw. 639; contracts must be carried into effect according to the intention of the parties at the time of making them: *Heald v. Cooper* 8 Me. 32; a logging contract providing for scaling by the rule in general use means in use at the time: *Williams v. Gilman* 3 Me. 276; *Homer v. Dorr* 10 Mass. 26; *Robinson v. Fiske* 25 Me. 405; *Dawson v. Kittle* 4 Hill 108; *Thomas v. Wiggers* 41 Ill. 470; *Karmuller v. Krotz* 18 Ia. 352; *Rindskoff v. Barrett* 14 Ia. 101; 1 Chitty Cont. 135, n 3.

COOLEY, J. Headley sued Hackley & McGordon to recover compensation for cutting, hauling and delivering in the Muskegon river a quantity of logs. The performance of the labor was not disputed, but the parties were not agreed as to the construction of the contract in some important particulars, and the amount to which Headley was entitled depended largely upon the determination of these differences. The defendants also claimed to have had a full and complete settlement with Headley, and produced his receipt in evidence thereof. Headley admitted the receipt, but insisted that it was given by him under duress, and the verdict which he obtained in the circuit court was in accordance with this claim.

I. The questions in dispute respecting the construction of the contract concerned the scaling of the logs. The contract was in writing, and bore date August 20, 1874. Headley agreed thereby to cut on specified lands and deliver in the main Muskegon river the next spring 8,000,000 feet of logs. The logs were to be measured or scaled by a competent person to be selected by Hackley & McGordon, "and in accordance with the standard rules or scales in general use on Muskegon lake and river," and the expense of scaling was to be mutually borne by the parties.

The dispute respecting the expense of scaling related only to the board of the scaler. Headley boarded him and claimed to recover one-half what it was worth. Defendants offered

evidence that it was customary on the Muskegon river for jobbers to board the scalers, at their own expense, but we are of opinion that this was inadmissible.   If under the contract with the scaler he was to be furnished his board, then the cost of the board was a part of the expense of scaling, and by the express terms of the contract was to be shared by the parties.   If that was not the agreement with him, Headley could only look to the scaler himself for his pay.

This is a small matter; but the question what scale was to be the standard is one of considerable importance.   The evidence tended to show that at the time the contract was entered into, scaling upon the river and lake was in accordance with the "Scribner rule," so-called; but that the "Doyle rule" was in general use when the logs were cut and delivered, and Hackley & McGordon had the logs scaled by that.   By the new rule the quantity would be so much less than by the one in prior use that the amount Headley would be entitled to receive would be less by some $2000; and it was earnestly contended on behalf of Headley that the scale intended, as the one in general use, was the one in general use when the contract was entered into.

We are of opinion, however, that this is not the proper construction.   The contract was for the performance of labor in the future, and as the scaling was to be done by third persons, and presumptively by those who were trained to the business, it would be expected they would perform their duties under such rules and according to such standards as were generally accepted at the time their services were called for.   Indeed such contracts might contemplate performance at times when it would scarcely be expected that scalers would be familiar with scales in use when they were made. It is true the time that was to elapse between the making of this contract and its performance would be but short, but if it had been many years the question of construction would have been the same; and if we could not suppose under such circumstances that the parties contemplated the scalers should govern their measurements by obsolete and perhaps now unknown rules, neither can we here.   It is fair to infer that

the existing scale was well known to the parties, and that if they intended to be governed by it at a time when it might have ceased to be used, they would have said so in explicit terms. In the absence of an agreement to that effect, we must suppose they intended their logs to be scaled as the logs of others would be at the place and time of scaling.

II. The question of duress on the part of Hackley & McGordon, in obtaining the discharge, remains. The paper reads as follows:

"MUSKEGON, MICH., August 3, 1875.

Received from Hackley & McGordon their note for four thousand dollars, payable in thirty days, at First National Bank, Grand Rapids, which is in full for all claims of every kind and nature which I have against said Hackley & McGordon.

Witness: THOMAS HUME.        JOHN HEADLEY."

Headley's account of the circumstances under which this receipt was given is in substance as follows: On August 3, 1875, he went to Muskegon, the place of business of Hackley & McGordon, from his home in Kent county, for the purpose of collecting the balance which he claimed was due him under the contract. The amount he claimed was upwards of $6200, estimating the logs by the Scribner scale. He had an interview with Hackley in the morning, who insisted that the estimate should be according to the Doyle scale, and who also claimed that he had made payments to others amounting to some $1400 which Headley should allow. Headley did not admit these payments, and denied his liability for them if they had been made. Hackley told Headley to come in again in the afternoon, and when he did so Hackley said to him: "My figures show there is 4260 and odd dollars in round numbers your due, and I will just give you $4000. I will give you our note for $4000." To this Headley replied: "I cannot take that; it is not right, and you know it. There is over $2000 besides that belongs to me, and you know it." Hackley replied: "That is the best I will do with you." Headley said: "I cannot take that, Mr. Hackley," and Hackley replied, "You do the next best thing you are a mind to.

You can sue me if you please." Headley then said: "I cannot afford to sue you, because I have got to have the money, and I cannot wait for it. If I fail to get the money to-day, I shall probably be ruined financially, because I have made no other arrangement to get the money only on this particular matter." Finally he took the note and gave the receipt, because at the time he could do nothing better, and in the belief that he would be financially ruined unless he had immediately the money that was offered him, or paper by means of which the money might be obtained.

If this statement is correct, the defendants not only took a most unjust advantage of Headley, but they obtained a receipt which, to the extent that it assumed to discharge anything not honestly in dispute between the parties, and known by them to be owing to Headley beyond the sum received, was without consideration and ineffectual. But was it a receipt obtained by duress? That is the question which the record presents. The circuit judge was of opinion that if the jury believed the statement of Headley they would be justified in finding that duress existed; basing his opinion largely upon the opinion of this Court in *Vyne v. Glenn* 41 Mich. 112.

Duress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will. It is commonly said to be of either the person or the goods of the party. Duress of the person is either by imprisonment, or by threats, or by an exhibition of force which apparently cannot be resisted. It is not pretended that duress of the person existed in this case; it is if anything duress of goods, or at least of that nature, and properly enough classed with duress of goods. Duress of goods may exist when one is compelled to submit to an illegal exaction in order to obtain them from one who has them in possession but refuses to surrender them unless the exaction is submitted to.

The leading case involving duress of goods is *Astley v. Reynolds* 2 Strange, 915. The plaintiff had pledged goods for £20, and when he offered to redeem them, the pawnbroker

refused to surrender them unless he was paid £10 for interest. The plaintiff submitted to the exaction, but was held entitled to recover back all that had been unlawfully demanded and taken. This, say the court, "is a payment by compulsion: the plaintiff might have such an immediate want of his goods that an action of trover would not do his business: where the rule *volenti non fit injuria* is applied, it must be when the party had his freedom of exercising his will, which this man had not: we must take it he paid the money relying on his legal remedy to get it back again." The principle of this case was approved in *Smith v. Bromley* Doug. 696, and also in *Ashmole v. Wainwright* 2 Q. B. 837. The latter was a suit to recover back excessive charges paid to common carriers who refused until payment was made to deliver the goods for the carriage of which the charges were made. There has never been any doubt but recovery could be had under such circumstances. *Harmony v. Bingham* 12 N. Y. 99. The case is like it of one having securities in his hands which he refuses to surrender until illegal commissions are paid. *Scholey v. Mumford* 60 N. Y. 498. So if illegal tolls are demanded, for passing a raft of lumber, and the owner pays them to liberate his raft, he may recover back what he pays. *Chase v. Dwinal* 7 Me. 134. Other cases in support of the same principle are *Shaw v. Woodcock* 7 B. & C. 73; *Nelson v. Suddarth* 1 H. & Munf. 350; *White v. Heylman* 34 Penn. St. 142; *Sasportas v. Jennings* 1 Bay, 470; *Collins v. Westbury* 2 Bay 211; *Crawford v. Cato* 22 Ga. 594. So one may recover back money which he pays to release his goods from an attachment which is sued out with knowledge on the part of the plaintiff that he has no cause of action. *Chandler v. Sanger* 114 Mass. 364. See *Spaids v. Barrett* 57 Ill. 289. Nor is the principle confined to payments made to recover goods: it applies equally well when money is extorted as a condition to the exercise by the party of any other legal right; for example when a corporation refuses to suffer a lawful transfer of stock till the exaction is submitted to: *Bates v. Insurance Co.* 3 Johns. Cas. 238; or

a creditor witholds his certificate from a bankrupt. *Smith v. Bromley* Doug. 696. And the mere threat to employ colorable legal authority to compel payment of an unfounded claim is such duress as will support an action to recover back what is paid under it. *Beckwith v. Frisbie* 32 Vt. 559; *Adams v. Reeves* 68 N. C. 134; *Briggs v. Lewiston* 29 Me. 472; *Grim v. School District* 57 Penn. St. 433; *First Nat. Bank v. Watkins* 21 Mich. 483.

But where the party threatens nothing which he has not a legal right to perform, there is no duress. *Skeate v. Beale* 11 Ad. & El. 983; *Preston v. Boston* 12 Pick. 14. When therefore a judgment creditor threatens to levy his execution on the debtor's goods, and under fear of the levy the debtor executes and delivers a note for the amount, with sureties, the note cannot be avoided for duress. *Wilcox v. Howland* 23 Pick. 167. Many other cases might be cited, but it is wholly unnecessary. We have examined all to which our attention has been directed, and none are more favorable to the plaintiff's case than those above referred to. Some of them are much less so; notably *Atlee v. Backhouse* 3 M. & W. 633; *Hall v. Schultz* 4 Johns. 240; *Silliman v. United States* 101 U. S. 465.

In what did the alleged duress consist in the present case? Merely in this: that the debtors refused to pay on demand a debt already due, though the plaintiff was in great need of the money and might be financially ruined in case he failed to obtain it. It is not pretended that Hackley & McGordon had done anything to bring Headley to the condition which made this money so important to him at this very time, or that they were in any manner responsible for his pecuniary embarrassment except as they failed to pay this demand. The duress, then, is to be found exclusively in their failure to meet promptly their pecuniary obligation. But this, according to the plaintiff's claim, would have constituted no duress whatever if he had not happened to be in pecuniary straits; and the validity of negotiations, according to this claim, must be determined, not by the defendants' conduct,

but by the plaintiff's necessities. The same contract which would be valid if made with a man easy in his circumstances, becomes invalid when the contracting party is pressed with the necessity of immediately meeting his bank paper. But this would be a most dangerous, as well as a most unequal doctrine ; and if accepted, no one could well know when he would be safe in dealing on the ordinary terms of negotiation with a party who professed to be in great need.

The case of *Vyne v. Glenn* 41 Mich. 112, differs essentially from this. There was not a simple withholding of moneys in that case. The decision was made upon facts found by referees who reported that the settlement upon which the defendant relied was made at Chicago, which was a long distance from plaintiff's home and place of business ; that the defendant forced the plaintiff into the settlement against his will, by taking advantage of his pecuniary necessities, by informing plaintiff that he had taken steps to stop the payment of money due to the plaintiff from other parties, and that he had stopped the payment of a part of such moneys ; that defendant knew the necessities and financial embarrassments in which the plaintiff was involved, and knew that if he failed to get the money so due to him he would be ruined financially ; that plaintiff consented to such settlement only in order to get the money due to him, as aforesaid, and the payment of which was stopped by defendant, and which he must have to save him from financial ruin. The report, therefore, showed the same financial embarrassment and the same great need of money which is claimed existed in this case, and the same withholding of moneys lawfully due, but it showed over and above all that an unlawful interference by defendant between the plaintiff and other debtors, by means of which he had stopped the payment to plaintiff of sums due to him from such other debtors. It was this keeping of other moneys from the plaintiff's hands, and not the refusal by defendant to pay his own debt, which was the ruling fact in that case, and which was equivalent, in our opinion, to duress of goods.

These views render a reversal of the judgment necessary, and the case will be remanded for a new trial with costs to the plaintiffs in error.

The other Justices concurred.