## NORTON *v.* STATE HIGHWAY DEPARTMENT.

1. CONTRACTS—DURESS.

    The question as to what constitutes duress is a matter of law, but whether duress exists in a particular case is a question of fact.

2. WORDS AND PHRASES—DURESS.

    Duress is compulsion or constraint by which a person is illegally forced to do or forbear some act by violence threatened which is such as to inspire a person of ordinary firmness with fear of serious injury to the person, reputation or fortune.

3. SAME—COERCION.

    Coercion is the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.

4. CONTRACTS—DURESS.

    Duress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will.

5. WORDS AND PHRASES—MORAL DURESS.

    Moral duress consists in imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness of another; the theory under which relief is granted being that the party profiting thereby has received money, property or other advantage, which in equity and good conscience he ought not to be permitted to retain.

6. CONTRACTS—STATE HIGHWAY CONSTRUCTION—PROFITS—RELEASE.

    In proceeding by contractor for profits on highway construction job for State, brought after receipt of payments on claims for compensation presented to highway department and execution of release by plaintiff, his claim herein which had not previously been presented *held*, without merit.

Duress, general treatment, see 2 Restatement, Contracts, 492–499.

7. Same—Release—Coercion—Duress—Profits.

Release, executed by contractor upon payment to him of more than amount theretofore claimed as balance due for highway construction job and which was not obtained by coercion or duress, barred recovery on claim for profits presented nearly · three years after execution of release.

8. Judgment—Release—Pleading.

It was proper for court of claims to adjudicate issue as to validity of release, signed by plaintiff, where it was the controlling issue in the case, was pleaded as a defense by State highway department in its answer, and plaintiff was afforded ample opportunity to support his contention that the release was without consideration because procured by ‚coercion or duress by business compulsion.

9. Trial—Court of Claims—Motion to Dismiss—Affidavits—Evidence.·

In the court of claims under a motion to dismiss, supported by affidavits for defects which do not appear on the face of the declaration, the court may take testimony (Court Rule No. 18 [1933]).

10. Contracts — Release — Consideration — Coercion — Duress —Profits.

Claim that release was without consideration because procured by coercion or duress by business compulsion *held*, without merit in proceeding in court of claims by contractor for profits on State highway construction project.

Appeal from Court of Claims; Miles (Fred T.), J., presiding. Submitted June 11, 1946. (Docket No. 8, Calendar No. 43,306.) Decided September 11, 1946.

Dan L. Norton filed his claim against Michigan State Highway Department for loss of profits. Defendant pleaded payment and release. Judgment for defendant. Plaintiff appeals. Affirmed.

*Carl O. Bay* (*William C. Brown,* of counsel), for plaintiff.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Meredith H. Doyle, A. Floyd Blakeslee,* and *Daniel J. O'Hara,* Assistants Attorney General, for defendant.

BOYLES, J.  Plaintiff appeals from a judgment of no cause for action entered in the court of claims. The only meritorious ground urged by plaintiff for reversal is that a certain release of claim executed by him is void if procured by coercion and duress. The facts are not in dispute.

In 1933 plaintiff was awarded a contract by the State highway department for certain highway construction work in Houghton county.  The work was part of a Federal aid project and after the work was commenced the Federal bureau of highways demanded a resurvey of the project and a change of plans.  This was done, resulting in a substantial increase in the amount of work and a necessity for the acquiring of additional equipment by the plaintiff.  In the spring of 1935 plaintiff was without funds to complete the work, suits were being started, and claims were being filed with the bonding company which had become surety for payment thereof. Plaintiff was given financial aid by the State highway department and the bonding company and plaintiff completed the work in October, 1935.

In 1936 plaintiff submitted to the highway department a claim for $52,854.23 which he then claimed to be the balance due him on his contract.  The highway department caused an audit to be made as a result of which it paid the bonding company approximately $27,000, with plaintiff's approval, to be applied on plaintiff's obligations for which the bonding company had become liable under its performance bond.  This money was used by the bond-

ing company to pay some of plaintiff's debts incurred in the construction work. In 1939 plaintiff again submitted to the highway department a claim, this time for the unpaid balance of his original claim, namely, the sum of $25,500.28. This claim was submitted in 1939 in the form of a letter dated March 4, 1939, from which we quote, as follows:

"I am submitting herewith a statement of profits and losses in connection with project 31–30 which shows a loss amounting to $25,500.28. This is a copy of statement submitted to Mr. Harry Coons after the project was completed.    *    *    *

"At the time this job was changed by the commissioner, my records showed a profit and I had completely moved the 70,000 yards which I bid on and the total yardage was then increased to 241,000 and it was after I had moved 190,000 yards that I appealed to Mr. Harry Coons for financial assistance and he did advance $19,904.63—then later on when the job was completed I submitted the enclosed statement at a meeting with Mr. Coons, Mr. Willman, and Mr. Koontz. Both Mr. Willman and Mr. Koontz agreed that the balance, namely, $52,854.23 which I claimed due me was correct and should be paid but for some reason Mr. Coons arbitrarily arrived at $27,353.95 which according to my figures leaves a balance of $25,500.28.    *    *    *

"In conclusion, I am asking that this claim of $25,500.28 be allowed and paid as I believed it would meet with the approval of the commissioner."

Thereupon a second audit was made by the highway department, as a result of which the highway department paid the bonding company $27,423.69, approximately $2,000 more than plaintiff then claimed. This was due to the audit made by the department, which showed $27,423.69 to be the amount actually owing to plaintiff. This payment was made to the bonding company and the plaintiff

together, and turned over to plaintiff after the bonding company had taken out the amount coming to it.

At the time this second and supposedly final payment was made by the highway department, plaintiff executed a release of further liability, approved by the bonding company, as follows:

"RELEASE

"Lansing, Michigan

"May 5, 1939

"In consideration of the payment to me by Michigan state highway department of the sum of twenty-seven thousand four hundred twenty-three and sixty-nine hundredths ($27,423.69) dollars, I do hereby acquit and forever release said department, the State of Michigan, and Murray D. Van Wagoner as State highway commissioner of the State of Michigan and his successors in office, from all claims and liability for damages resulting from or in any way involved in my operations as principal contractor in pursuance of contract 2 of project NRS 31-30 dated November 20, 1933, and all extra costs in connection therewith, covering the grading, drainage, and mine rock surfacing of a section of highway M-35 in Houghton county, Michigan; and assume and agree to pay all just claims now outstanding or in the future arising against this project.

"D. L. NORTON.

"Approved:

"National Surety Company

"By E. J. PARKER

Attorney-in-Fact."

Three years later (lacking six days) plaintiff filed in the court of claims the instant suit against the State highway department for $30,900, alleging in his petition as a basis for his claim, as follows:

"4.    That although often requested so to do, the said State highway department wholly refused to pay him a fair and reasonable profit for his services

so rendered but did pay the balance of the audited cost of said construction on the 5th day of May, 1939.

"5.  That the usual and customary compensation paid to contractors on modified contracts is 15 per cent of the cost thereof."

The State highway department answered, alleging as an affirmative defense that the defendant in 1939 had paid plaintiff $27,423.69, that it was accepted by plaintiff in full accord and satisfaction of plaintiff's alleged claim, and that the plaintiff had thereupon released the defendant from further liability.  The plaintiff, by way of a reply, set up that the purported release was obtained without consideration, by duress and "business compulsion," therefore void.  Judge Fred T. Miles, presiding in the court of claims, held that there was no evidence of coercion, duress or "business compulsion" as a factor in the execution of the release, and entered judgment denying plaintiff's claim.  This is the only meritorious question in the case, and it is again urged here, for reversal.

Plaintiff's basis for claiming duress or compulsion is indicated by his admission on cross-examination, as follows:

"*Q.*  Now, the only duress or compulsion that you claim in this case is the reason that when you signed this release you were hard up?

"*A.*  Yes.

"*Q.*  And you figured that to get $27,000 was better than nothing?

"*A.*  Yes.

"*Q.*  But there was no force and nobody was mean to you?

"*A.*  No.

"*Q.*  You were of sound mind?

"*A.*  I think so."

To support his claim of coercion and duress, plaintiff relies on *City of Saginaw* v. *Consumers Power*

*Co.*, 304 Mich. 491, and *Lafayette Dramatic Productions, Inc.*, v. *Ferentz*, 305 Mich. 193 (145 A. L. R. 1158). These cases are readily distinguishable from the one now before us. In *City of Saginaw* v. *Consumers Power Co.*, *supra*, plaintiffs sued the Consumers Power Company to recover overpayments for gas. Under the city ordinance the company could shut off plaintiffs' supply of gas if payment was not promptly made. The court said (p. 500):

"Thus, as a matter of law, the circumstances herein presented created a necessity of payment. This being the case, the payments were made under compulsion *to a party who had no right to receive them* and they are, therefore, recoverable."

Plaintiff also relies on *Lafayette Dramatic Productions, Inc.*, v. *Ferentz*, *supra*. In that case plaintiff sought injunctive relief against the defendants to restrain interference with plaintiff's operation of a theater. The main issue in the case was whether the objective sought to be obtained by the defendants was a lawful labor objective. The court defined duress and coercion as follows (pp. 216, 217):

"The question as to what constitutes duress is a matter of law, but whether duress exists in a particular case is a question of fact. *Clement* v. *Buckley Mercantile Co.*, 172 Mich. 243. Duress and coercion are defined in Webster's New International Dictionary (2d Ed.), as follows:

" 'Duress. Compulsion or constraint by which a person is illegally forced to do or forbear some act. This may be by * * * violence threatened. * * * The violence or threats must be such as to inspire a person of ordinary firmness with fear of serious injury to the person, * * * reputation, or fortune.'

" 'Coercion. The application to another of such force, either physical or moral, as to constrain him

to do against his will something he would not otherwise have done.'

"In *Hackley* v. *Headley,* 45 Mich. 569, Mr. Justice COOLEY said, p. 574:

" 'Duress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will. It is commonly said to be of either the person or the goods of the party.'

"In the case of *Rees* v. *Schmits,* 164 Ill. App. 250, the court said, p. 258:

" ' 'Moral duress consists in imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness of another; the theory under which relief is granted being that the party profiting thereby has received money, property or other advantage, which in equity and good conscience he ought not to be permitted to retain.''

Neither of the claims submitted to the highway department by plaintiff in 1936 and 1939 made any suggestion that in addition thereto the plaintiff still had a claim for profit or commissions. In fact, plaintiff's demand for further payment in 1939 expressly stated that he was submitting therewith "a statement of profits and losses." There was no coercion or duress exercised by the highway department to influence plaintiff's voluntary submission of his claim in that manner in 1939. In the letter submitting his further claim plaintiff stated that certain representatives of the highway department, naming them, "agreed that the balance, namely, $52,854.23 *which I claimed due me* was correct." We find no merit in plaintiff's present suit against the highway department for an additional $30,900. There would be more merit in plaintiff's claim of coercion if he had submitted to the highway department in 1939 his present claim for profits or commissions, and had

then been denied such claim. Instead, he submitted a statement of what he then claimed was due him, and upon being paid more than he claimed signed the release which he now seeks to repudiate. In executing the release plaintiff did so with full knowledge that the payment he then received was in full satisfaction of his claims arising out of the construction job here under consideration.

A somewhat similar situation arose in *Holmes* v. *Bankers Life Co.*, 271 Mich. 460, where Mr. Justice Wiest, writing for a majority of the court, said (pp. 461, 462):

"Plaintiff could not execute the settlement receipt with her tongue in her cheek or the mental reservation to not be bound by it, and this suit is exactly what she intended to bring at the time she signed the settlement receipt. I am not in favor of that kind of dealing. * * *

"The settlement receipt was fully understood by plaintiff and bars this suit."

The release here under consideration was not obtained by coercion or duress, and it completely bars recovery. We see no merit in plaintiff's claim, now advanced for the first time here, that the court of claims should not have disposed of the case on the merits. In that court the defendant in its answer pleaded payment and release as affirmative defenses, in accordance with Court Rule No. 23, § 3 (1933).* In his reply plaintiff set up that the release was void by reason of coercion and duress, in accordance with Court Rule No. 24, §§ 1, 2 (1933).† Thereupon the defendant served notice on the plaintiff that the question of payment would be brought up for determination by the court on a certain day in advance of

---

* To the same effect, Court Rule No. 23, § 3 (1945).
† To the same effect, Court Rule No. 24, §§ 1, 2 (1945).

trial. 3 Comp. Laws 1929, § 14120 (Stat. Ann. § 27.814). However, it was not brought on at that time, under such notice. More than a year later these parties came into the court of claims, testimony of six witnesses was taken, exhibits received in evidence, and the issue as to the validity of the release was submitted and decided. It was and is the controlling issue in the case. It was not heard and decided on a motion to dismiss under Court Rule No. 18 (1933), * as plaintiff now claims.

Michigan Court Rule No. 18 (1933) * provides for the filing of a motion to dismiss *supported by affidavits* for defects which do not appear on the face of the declaration. Even under such procedure, the court might take testimony, as was done by the court of claims in the instant case. Plaintiff made no objection in the court of claims to the procedure there followed, and no substantial rights of the plaintiff have been infringed upon. The only meritorious issue in the case is whether the release is valid. Plaintiff was afforded ample opportunity in the court of claims to support his contention that the release was without consideration because procured by coercion, or "duress by business compulsion." Both the facts and the law fail to support his claim. We concur in the conclusion reached in the court of claims that the release is valid, and that it bars plaintiff from further recovery.

Judgment affirmed, with costs.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, REID, and NORTH, JJ., concurred. STARR, J., took no part in the decision of this case.

---

* To the same effect, Court Rule No. 18 (1945).