HORN v COOKE

Docket No. 57596. Submitted June 7, 1982, at Grand Rapids.—Decided August 24, 1982.

Marcella F. Horn was diagnosed by Dr. Weldon J. Cooke as having pelvic inflammatory disease. When her pain persisted following a rectal fistulectomy, Dr. Cooke scheduled Horn for an abdominal hysterectomy. When Horn entered the Berrien General Hospital, she signed a consent form for an abdominal hysterectomy and an arbitration agreement, after allegedly being told by Dr. Cooke that he intended to remove only one ovary and one tube. During the subsequent surgery, Dr. Cooke performed an appendectomy, hemorrhoidectomy, anterior cystourethopexy, and a complete hysterectomy. Horn brought suit in Berrien Circuit Court against Dr. Cooke, Southwestern Medical Clinic, P.C., employer of Dr. Cooke, and the County of Berrien, operator of Berrien General Hospital, the hospital in which the operation was performed, for battery, failure of informed consent, negligence, and fraud and deceit. Defendants moved for accelerated judgment on the basis that the court action was barred by the arbitration agreement. Plaintiff claimed that the arbitration agreement had been fraudulently induced and sought an evidentiary hearing on that question. Zoe S. Burkholz, J., denied the request for an evidentiary hearing and granted defendants' motion for accelerated judgment, finding the arbitration agreement valid on its face. Plaintiff appeals by leave granted. *Held:*

1. Plaintiff's complaint and answer to defendants' motion for accelerated judgment raised a question of fact as to whether the agreement to arbitrate was obtained by a fraudulent mis-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arbitration and Award § 11.

[2] 5 Am Jur 2d, Arbitration and Award § 15.

[3] 5 Am Jur 2d, Arbitration and Award § 163.

[4] 5 Am Jur 2d, Arbitration and Award §§ 36, 175.

[5] 5 Am Jur 2d, Arbitration and Award §§ 61, 62.

[6] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 376. Arbitration of medical malpractice claims. 84 ALR3d 375.

[7] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 374.

representation. If plaintiff can establish both that a misrepre-
sentation was made and that she relied upon that misrepresen-
tation in making her decision to arbitrate and was thereby
harmed, plaintiff's agreement to arbitrate should be voided.
The trial court should have permitted testimony on the ques-
tion of whether there was a fraudulent misrepresentation
which would void the arbitration agreement.

2. Plaintiff's claim that she did not understand the arbitra-
tion agreement when she signed it does not vitiate the effect of
the agreement, since she was given ample opportunity to
consider the agreement before having to sign it. Since plaintiff
does not assert that she lacked the capacity to understand the
agreement, she is bound by her negligence in failing to ascer-
tain the meaning of the agreement before signing. For the
same reason, her alleged semiliterate status will not defeat the
enforcement of the agreement in view of the opportunity she
had to have the agreement read to her before signing it.

3. The medical malpractice arbitration act neither creates an
inherently oppressive arbitration scheme nor a constitutionally
impermissible means of claim determination.

Remanded.

1. ARBITRATION — CONTRACTS — MUTUAL ASSENT.

An arbitration agreement is a contract whereby all the parties
thereto agree to forego their rights to proceed with a court
action and, instead, submit their disputes to a panel of arbitra-
tors; no contract to arbitrate can arise except upon the ex-
pressed mutual assent of the parties and no party can be
required to arbitrate an issue he has not agreed to submit to
arbitration.

2. ARBITRATION — CONTRACTS — JUDICIAL QUESTION.

The determination of whether an arbitration contract exists is for
the courts to decide, applying general contract principles (GCR
1963, 769.2).

3. ARBITRATION — CONTRACTS — COERCIVE CONTRACTS.

A signature to an arbitration agreement is void or at least
voidable due to duress where the signature is obtained by
coercion; an agreement to arbitrate a malpractice claim does
not bind the parties if the signature to such agreement was
obtained as a result of force or coercion.

4. ARBITRATION — CONTRACTS — FRAUDULENT MISREPRESENTATION —
COURTS — JURISDICTION.

A court, in determining whether to dismiss for lack of jurisdiction

a medical malpractice action on the basis of an agreement to arbitrate malpractice claims, must, upon an allegation that the patient was induced into signing the arbitration agreement by fraudulent misrepresentations by the doctor of the scope of the surgical procedure to be performed, take testimony and determine whether the agreement was induced by a fraudulent misrepresentation; upon a finding that the arbitration agreement was induced by a fraudulent misrepresentation, the court should void the arbitration agreement.

5. ARBITRATION — PHYSICIANS AND SURGEONS — LITERACY — MENTAL CAPACITY.

A medical malpractice arbitration agreement is not rendered unenforceable by the semiliterate status of the patient or the fact that the patient does not understand fully the contents of the agreement before signing it where the agreement is clear and unambiguous, the patient does not lack the capacity to understand the agreement, and the patient is afforded the opportunity to have the agreement read to him and to consider the signing of the agreement in a noncoercive atmosphere, the patient being chargeable with knowledge of the contents of the agreement under such circumstances.

6. ARBITRATION — MEDICAL MALPRACTICE ARBITRATION ACT.

The medical malpractice arbitration act does not create an inherently oppressive arbitration scheme that can never result in a layman's knowing and voluntary waiver of the right to a trial (MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.*).

7. ARBITRATION — MEDICAL MALPRACTICE ARBITRATION ACT — CONSTITUTIONAL LAW.

The medical malpractice arbitration act is not unconstitutional by reason of the requirement that one member of each three person arbitration panel shall be a hospital physician (MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.*).

*Charfoos, Christensen, Gilbert & Archer, P.C.* (by *John A. Obee* and *J. Douglas Peters),* for plaintiff.

*Bennett, Lewis, LaParl, Hollander, Stephens & Milligan, P.C.* (by *Richard A. Milligan* and *James M. Marquardt),* for defendants Weldon J. Cooke and Southwestern Medical Clinic, P.C.

*Best, Arnold, Gleeson & Best, P.C.* (by *Anne L. Heyns),* for defendant Berrien County.

Before: D. F. WALSH, P.J., and ALLEN and T. GILLESPIE,* JJ.

ALLEN, J. Plaintiff brought this medical malpractice action after undergoing abdominal surgery on January 11, 1978. Defendants Weldon Cooke, Southwestern Medical Clinic, and Berrien County moved for accelerated judgment, claiming the circuit court lacked jurisdiction over the subject matter as plaintiff had signed an arbitration agreement before surgery and there had been no timely revocation of the agreement. The Berrien County Circuit Court granted the motion on December 22, 1980, and we granted plaintiff's delayed application for leave to appeal on July 16, 1981.

Plaintiff's complaint alleged that on October 10, 1977, she consulted with defendant Cooke, complaining of pain in her right side, and he diagnosed pelvic inflammatory disease. On December 13, 1977, plaintiff underwent a rectal fistulectomy. The pain persisted and on January 5, 1978, Dr. Cooke scheduled an abdominal hysterectomy. Five days later, plaintiff entered Berrien General Hospital and signed a consent form for an abdominal hysterectomy and an arbitration agreement. Plaintiff alleged that Dr. Cooke told her he intended to remove "one ovary and one tube", yet proceeded to perform an unconsented-to appendectomy, hemorrhoidectomy, and anterior cystourethopexy, as well as a complete hysterectomy. Plaintiff sued Dr. Cooke, the clinic in which he was employed, and the hospital for battery, failure of informed consent, negligence, and fraud and deceit. Plaintiff also named as a defendant Dr. M. S. Zaman, claim-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ing he performed unnecessary repair surgery in March 1978. The action against Dr. Zaman is not involved in this appeal.

Dr. Cooke answered, stating that plaintiff had fully consented to the entire abdominal surgery. The motion for accelerated judgment asserted that the claims were also barred by the arbitration agreement plaintiff executed on the day before surgery and which plaintiff had not attempted to revoke until July 17, 1979, approximately one and one-half years after the surgery. In her answer, plaintiff argued that defendant Cooke misrepresented the nature of the surgery. Plaintiff asked the court to conduct an evidentiary hearing on her claim that the arbitration agreement had been fraudulently induced, but the court refused, finding the arbitration agreement valid on its face.

An arbitration agreement is a contract whereby all the parties thereto agree to forego their rights to proceed with a court action and, instead, to submit their disputes to a panel of arbiters. *Kaleva-Norman-Dickson School Dist No 6 v Kaleva-Norman-Dickson School Teachers' Ass'n,* 393 Mich 583, 587; 227 NW2d 500 (1975). The first inquiry into the arbitrability of a dispute is to determine whether an arbitration agreement has been reached by the parties. *Whitehouse v Hoskins Mfg Co,* 113 Mich App 138; 317 NW2d 320 (1982). No contract to arbitrate can arise except upon the expressed mutual assent of the parties. *Brown v Considine,* 108 Mich App 504, 507; 310 NW2d 441 (1981). A party cannot be required to arbitrate an issue he has not agreed to submit to arbitration. *Kaleva-Norman-Dickson School Dist No 6, supra; Lanting v Jenison Public Schools,* 103 Mich App 165; 302 NW2d 631 (1981).

The determination of whether an arbitration

contract exists is for the courts to decide, applying general contract principles. *Kaleva-Norman-Dickson, supra; Detroit Automobile Inter-Ins Exchange v Straw,* 96 Mich App 773, 777; 293 NW2d 704 (1980); GCR 1963, 769.2.

If a signature to an arbitration agreement is obtained by coercion, the agreement, like any contract, is void or at least voidable due to duress. *Brown v Siang,* 107 Mich App 91, 108; 309 NW2d 575 (1981); *Capman v Harper-Grace Hospital,* 96 Mich App 510, 514; 294 NW2d 205 (1980). Defendants attempt to distinguish *Capman* on the ground it involved a violation of the medical malpractice arbitration act, MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.* While it is true that the alleged coercion in *Capman* also constituted a statutory violation (the patient claimed that she was told she would receive no treatment until she signed the agreement), the Court's reasoning was clear and explicit:

"The existence of a coercive atmosphere which undermines the free will of one of the parties can vitiate an otherwise valid contract * * * [I]f defendant did precondition plaintiff Maryann Capman's health care upon her signing the arbitration agreement, her free will might have been undermined and she might have been improperly coerced." *Capman, supra,* 515.

We agree with the *Capman* panel that an arbitration agreement signed as a result of force or coercion does not bind the parties.

In her complaint and in her answer to defendants' motion for accelerated judgment, plaintiff raised a fact question as to whether her consent to arbitrate had been obtained by a fraudulent misrepresentation as to the scope of the surgery to be performed. If this misinformation was in fact

given with the intention of inducing the plaintiff to agree to arbitrate and this information was relied upon by the plaintiff when she made the determination to arbitrate, the agreement may be set aside as having been fraudulently obtained.

We observe that the question raised by plaintiff is not whether the surgery performed exceeded the scope of the surgery agreed upon. Were this the issue before us, it would clearly be subject to arbitration, MCL 600.5040(1); MSA 27A.5040(1). Here, however, plaintiff claims that she was induced to arbitrate because of the alleged misrepresentation as to the scope of the surgery. In order to avoid the arbitration agreement, plaintiff must both establish that Dr. Cooke made a misrepresentation and show that she relied upon it in making the decision to arbitrate, and was harmed thereby.

We find it necessary to remand to permit the trial court to take additional testimony on this subject. If the court finds that the agreement was induced by a fraudulent misrepresentation, the agreement should be voided.

Plaintiff raises the additional claim that she was unable to understand the nature and consequences of the arbitration agreement due to her limited ability to read and her fears regarding the surgery, as well as defendants' failure to explain the agreement to her.

Plaintiff was waiving her right to a trial of any dispute before a court; this right was clearly and unambiguously stated in the arbitration agreement. The agreement also stated that the signatory read or had read to her the agreement and fully understood its contents. We note that plaintiff had contemplated the surgery for some time, had undergone a similar operation approximately one month before, and had signed an agreement to

arbitrate at that time. She therefore had ample time to consider the arbitration agreement and its ramifications away from the hospital environment. Moreover, she had the opportunity of twice having the agreement read to her before she signed it. For a patient, even one facing surgery with a great deal of apprehension, these safeguards are sufficient to find that the patient had knowingly waived the right to trial. *Cushman v Frankel,* 111 Mich App 604, 608; 314 NW2d 705 (1981). Here, unlike the situation in *Cushman, supra,* plaintiff raises the additional claim that her semiliterate status prevented her from understanding the contents of the agreement that she signed. We do not believe that plaintiff should be allowed to avoid the agreement because of her own negligence in signing a document without learning of its contents.

"The stability of written instruments demands that a person who executes one shall know its contents or be chargeable with such knowledge. If he cannot read, he should have a reliable person read it to him. His failure to do so is negligence which estops him from voiding the instrument on the ground that he was ignorant of its contents, in the absence of circumstances fairly excusing his failure to inform himself." *Sponseller v Kimball,* 246 Mich 255, 260; 224 NW 359 (1929).

The situation in this case is distinguishable from that in *Star Realty, Inc v Bower,* 17 Mich App 248; 169 NW2d 194 (1969), on which plaintiff relies, for in that case the person seeking to avoid the effect of a written contract lacked the *capacity to understand* the contract. Here, plaintiff's allegation, if true, establishes only that she was *negligent in failing to ascertain the meaning* of the words in the agreement—not that she was incapable of

understanding them. Accordingly, we find that the lower court had no obligation to conduct a hearing to determine whether plaintiff was capable of reading the agreement.

In a related issue, plaintiff argues that the medical malpractice arbitration act has established an "inherently oppressive" arbitration scheme that can never result in a layman's knowing and voluntary waiver of the right to a trial. We disagree. The act provides a number of safeguards to insure that the execution of all agreements results in a knowing and voluntary waiver of the right to trial, including a statement in 12-point type that the patient need not agree to arbitrate, a prohibition against offering the agreement at the time a patient is undergoing emergency treatment, and a provision that allows a patient to withdraw from the agreement within 60 days of discharge from the hospital. We agree with the majority in *Brown v Siang, supra,* 104-106, that a more detailed statement of the rights surrounding a trial and the procedures used in arbitration is unnecessary to a voluntary waiver.[1]

Finally, plaintiff asks this Court to hold that the medical malpractice arbitration act is unconstitutional as it provides that one member of each

---

[1] In a recent decision, *Moore v Fragatos,* 116 Mich App 179; 321 NW2d 781 (1982), one panel of this Court adopted a prophylactic rule requiring a hospital to provide extensive information about the arbitration process under the medical malpractice arbitration act. The majority of this panel declines to require that this additional information be imparted to a patient. Much of the information required by *Moore* is contained within the patient information booklet that is given to all patients under the act. MCL 600.5041(6); MSA 27A.5041(6). We also believe that there is insufficient information before the courts about the possible bias of arbitration panels to require that a patient be instructed that physicians may have an incentive to minimize the size of malpractice awards. Instead, we think that the voluntariness of each agreement may be judged on its own facts and if, as here, there is some proof that the signing of the agreement resulted from coercion, the agreement should be held void.

three person panel be a hospital administrator or physician. This claim has been raised in a number of cases, with differing results in this Court. The majority of the members of this Court who have ruled on this issue have found that the act is constitutional. *Rome v Sinai Hospital of Detroit,* 112 Mich App 387; 316 NW2d 428 (1982); *Cushman v Frankel, supra; Williams v O'Connor,* 108 Mich App 613; 310 NW2d 825 (1981); *Brown v Considine, supra; Morris v Metriyakool,* 107 Mich App 110; 309 NW2d 910 (1981), *lv gtd* 412 Mich 884 (1981); and *Brown v Siang, supra.* Others, however, have disagreed. *Strong v Pontiac General Hospital,* 117 Mich App 143; 323 NW2d 629 (1982); *Malek v Jayakar,* 116 Mich App 111; 321 NW2d 858 (1982); *Jackson v Detroit Memorial Hospital,* 110 Mich App 202; 312 NW2d 212 (1981), *lv gtd* 412 Mich 885 (1981); *Piskorski v Art Centre Hospital,* 110 Mich App 22; 312 NW2d 160 (1981).

This panel believes that the act is constitutional for the reasons stated in *Brown* and *Morris, supra.*

Remanded to determine whether plaintiff was fraudulently induced to sign the arbitration agreement.