**Mary MYERS, Plaintiff,**

v.

**UNITED STATES of America, Defendant and Counter– and Third–Party Plaintiff,**

v.

**Matthew J. MYERS, Third–Party Defendant.**

**No. 1:94–CV–74.**

United States District Court,
W.D. Michigan,
Southern Division.

July 18, 1996.

---

Dean A. Robb, Sr., Robb, Messing, Palmer & Dignan, P.C., Traverse City, MI, Frederick D. Dilley, Boyden, Waddell, Timmons & Dilley, Grand Rapids, MI, Steven J. Vander Ark, Beusse Holmes, P.C., Grand Rapids, MI, Stanley P. Gimbel, Stanley P. Gimbel Law Offices, Milwaukee, WI, for Mary Myers.

Thomas J. Gezon, Asst. U.S. Attorney, Michael H. Dettmer, United States Attorney, Grand Rapids, MI, Michael W. Davis, U.S.

Department of Justice, Tax Division, Washington, DC, for U.S.

Steven J. Vander Ark, Beusse Holmes, P.C., Grand Rapids, MI, for Matthew J. Myers.

## OPINION

BENJAMIN F. GIBSON, District Judge.

On April 24, 1996, and July 11, 1996, a bench trial was held in this case. Pursuant to Federal Rule of Civil Procedure 52(a), the following is the Court's Findings of Fact and Conclusions of Law.

### I.

### FINDINGS OF FACT

Plaintiff Mary Myers and third-party defendant Matthew Myers have been married since 1978. Sometime in the late 1970s, Mr. Myers became involved in the sale and distribution of marijuana, which continued until the mid–1980s. On September 4, 1986, Mr. Myers was indicted on drug conspiracy charges, 21 U.S.C. § 846, possession with intent to distribute and the distribution of marijuana, 21 U.S.C. § 841(a)(1), and operating a continuing criminal enterprise, 21 U.S.C. § 848. The Government also alleged that the profits and assets obtained by Mr. Myers through his participation in a continuing criminal enterprise were subject to forfeiture pursuant to Title 18 United States Code Section 1963. Mr. Myers faced a possible sentence of life in prison if convicted on all charges.

On May 16, 1987, two days before Mr. Myer's trial was scheduled to commence, Mrs. Myers drove her husband to Grand Rapids, Michigan, to discuss a possible plea agreement with the government. When they arrived at the Federal Building in Grand Rapids, Mr. and Mrs. Myers and Richard Lustig, Mr. Myers' attorney, went into a room where Mrs. Myers listened to her husband and Mr. Lustig discuss the terms of the plea agreement. After approximately ten minutes, a disagreement arose between Mrs. Myers and Mr. Lustig, which resulted in

Mrs. Myers leaving the room to wait in the hall.

At some point later in the day, the terms of the agreement were worked out between Mr. Myers and the government. Mrs. Myers was then approached and asked to sign the agreement.[1] She read through the agreement and signed it. No one from the government ever discussed the terms of the agreement with Mrs. Myers or the fact that her signature, agreeing to the forfeiture of property and a lien on the couple's residence, was required. The plea agreement was also signed by Assistant United States Attorney John C. Bruha, Richard Lustig, and Matthew Myers.

Under the terms of the agreement, Mr. Myers agreed to plead guilty to one count of violating the RICO statute, 18 U.S.C. §§ 1961–1963; one count of conspiracy to defraud the United States, 18 U.S.C. § 371; and one count of income tax evasion for the taxable year 1981, 26 U.S.C. § 7201.

In paragraph 3 of the agreement, Mr. Myers agreed to forfeit all of his property pursuant to Title 18 United States Code Section 1963. Therefore, Mr. Myers agreed that the property in question was obtained as a result of his illegal activity. Paragraph 3 goes on to state that Mr. Myers and his wife agree to "execute any documents necessary to effectuate transfer of their property to the government."

However, paragraph 4 states that "in lieu of forfeiture of defendant's residence [Lots 1, 2, 6, 7, 9 & 10, located in Traverse City, Michigan] ..., the defendant and his wife agree to give the Internal Revenue Service a lien against" the residential property. Paragraph 4 explains that "[i]n the event that the property is needed for civil tax collection, the defendant and his wife agree to execute all necessary documents to transfer and convey the property to the Internal Revenue Service for tax collection purposes."

In paragraph 5, the government agreed to dismiss the indictments against Mr. Myers

---

1. It is unclear from the testimony who approached Mrs. Myers and asked her to sign the plea agreement.

and not seek any further charges against him. The government further agreed "not to prosecute any members of the defendant's family for any transactions involving these indictments." In paragraph 6, the parties agreed that the defendant's sentence would not exceed 10 years in prison.

In accordance with the plea agreement, Mr. and Mrs. Myers signed documents surrendering property to the government, with the exception of their residential estate. Mr. Myers spent approximately four years in prison, while Mrs. Myers remained on the residential estate. To this day, Mr. and Mrs. Myers continue to live on the estate.

In 1994, Mary Myers brought this action to quiet title, asking this Court to find that the government has no interest in her alleged undivided one-half interest in the residential estate. The government filed a counterclaim and added Matthew Myers as a third-party defendant. Count I of the counterclaim seeks enforcement of the plea agreement signed by the Myers. In the alternative, Count III asks the Court to find that the residential estate was fraudulently conveyed to Mary Myers as a tenancy by the entirety, allowing the government to foreclose on the estate.[2] Since Count III need not be reached if the Court upholds the plea agreement, the Court bifurcated the trial. Accordingly, only testimony on Count I, concerning the validity of the plea agreement, was heard by the Court on July 11, 1996.

## II.

### CONCLUSIONS OF LAW

■ The parties agree that Michigan contract law should be used to determine the validity of the plea agreement as it relates to Mrs. Myers. "In Michigan, the essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Thomas v. Leja*, 187 Mich.App. 418, 468 N.W.2d 58, 60, (1991) (citing *Detroit Trust Co. v. Struggles*, 289 Mich. 595, 286 N.W. 844 (1939)). Plaintiff claims that the plea agreement is void because (1) no consideration was given, or, if consideration was given, it was illegal consideration because it is against public policy, (2) plaintiff was under duress at the time she signed the agreement, (3) plaintiff did not understand the ramifications of the contract, and (4) the agreement does not apply to plaintiff.

### A.

■ The parties offer various arguments concerning Mrs. Myers' consideration for the agreement; however, the plea agreement itself illustrates the consideration. Paragraph 4 of the agreement contains the consideration that the government would not seek immediate forfeiture of the estate. This provision saved Mrs. Myers from having to spend time and money to litigate her interest in the property through a hearing under Title 18 United States Code Section 1963. It also saved her from running the risk of losing her interest at such a hearing. The agreement also explains that the lien will be lifted if the civil tax liability is satisfied. As the government argues, this provision allows the Myers to pay their tax liability with other funds in order to avoid foreclosure on their residential estate.

In paragraph 5 of the agreement, plaintiff received the further consideration that the government would not prosecute any other members of the Myers' family. Mrs. Myers also received the benefit of the consideration given to her husband for entering into the plea agreement. She received the benefit of knowing that all other charges against her husband would be dismissed and that there would be no new charges. She also received the benefit of her husband's lighter sentence, allowing him to return home much sooner and help support the family. Mrs. Myers received the benefit of her husband being able to voluntarily surrender so that he could say goodbye to the couple's children. Finally, she received the benefit of the government's recommendation that her husband be held in a minimum security prison, giving her the peace of mind that he would suffer as little as possible while in prison. This Court

---

**2.** Count II of the government's counterclaim against Matthew Myers has been resolved pursuant to a stipulation and order adjudicating Matthew Myers' tax liability at $6,306,079.12.

finds that Mrs. Myers received consideration for the agreement.

Plaintiff claims, however, that the consideration of agreeing not to prosecute other family members and the consideration of reducing her husband's sentence are illegal consideration because they are against public policy. This Court does not reach the question of whether the promise not to prosecute family members and the promise to reduce Mr. Myers' sentence is illegal consideration because the Court finds that the other consideration, set forth above, is sufficient to support the agreement. Accordingly, the plea agreement is not void for lack of legal consideration.

### B.

■ Plaintiff also argues that the agreement is voidable because she was under duress at the time she signed the agreement. " 'The question as to what constitutes duress is a matter of law, but whether duress exists in a particular case is a question of fact.' " *Norton v. Michigan State Highway Dept.*, 315 Mich. 313, 24 N.W.2d 132, 135 (1946) (quoting *Clement v. Buckley Mercantile Co.*, 172 Mich. 243, 137 N.W. 657 (1912)).

The *Norton* court adopted the definition of duress and coercion established in *Hackley v. Headley*, 45 Mich. 569, 8 N.W. 511, 512 (1881), which held:

> "Duress exists when one by the unlawful acts of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will."

*Norton*, 24 N.W.2d at 135 (quoting *Hackley, supra*). In *Apfelblat v. National Bank Wyandotte–Taylor*, 158 Mich.App. 258, 404 N.W.2d 725, 728 (1987), the court held that "[d]uress requires compulsion or coercion by which one is illegally forced to act by fear of serious injury to person, reputation or fortune." The court explained that "[f]ear of financial ruin alone is insufficient to establish economic duress; it must also be established that the person applying the coercion acted unlawfully." *Id.; see also Enzymes of America v. Deloitte, Haskins & Sells*, 207 Mich. App. 28, 523 N.W.2d 810, 814 (1994), *rev'd sub nom. on other grounds*, 450 Mich. 889,

539 N.W.2d 513 (1995) (reiterating the requirement of showing illegality to prove duress).

This Court finds from the testimony of every witness, including Mrs. Myers, that no one representing the government ever spoke with Mrs. Myers about the plea agreement. Therefore, this Court finds, as a matter of law, that Mrs. Myers did not sign the agreement under duress.

### C.

■ Next, plaintiff argues that the contract is voidable because her emotional state prevented her from understanding the details of the agreement, and the government failed to explain them to her. Mrs. Myers testified that she was distraught the day she signed the agreement and was not thinking about her property. Instead, she claims she was focusing on her husband and his possible jail sentence. She explained that, in this emotional state, she was unable to understand the contents of the agreement even though she read it. She further explained that at that time in her life she lacked assertiveness and always did whatever others asked her to do. She said that she would never have refused to sign an agreement her husband asked her to sign.

In *Horn v. Cooke*, 118 Mich.App. 740, 325 N.W.2d 558, 561 (1982), the plaintiff challenged the validity of an agreement because "she was unable to understand the nature and consequences of the arbitration agreement due to her limited ability to read and her fears regarding the surgery, as well as defendants failure to explain the agreement to her." The court upheld the agreement, finding that plaintiff knowingly waived her right to trial. In doing so, the court quoted from *Sponseller v. Kimball*, 246 Mich. 255, 260, 224 N.W. 359 (1929), which held:

> "The stability of written instruments demands that a person who executes one shall know its contents or be chargeable with such knowledge. If he cannot read, he should have a reliable person read it to him. His failure to do so is negligence which estops him from voiding the instrument on the ground that he was ignorant

of its contents, in the absence of circumstances fairly excusing his failure to inform himself."

*Id.* 325 N.W.2d at 561–62.

The Michigan Supreme Court quoted the same language from *Sponseller* in *Scholz v. Montgomery Ward & Co.*, 437 Mich. 83, 468 N.W.2d 845, 848–49 (1991). The plaintiff in *Scholz* claimed that although she read and understood the written employment-at-will agreement, she did not understand that it applied to her Sunday work arrangement. *Id.* 468 N.W.2d at 848. The Court held:

> It is well settled that the failure of a party to obtain an explanation of a contract is ordinary negligence. Accordingly, this estops the party from avoiding the contract on the ground that the party was ignorant of the contract provisions.

*Id.* (footnote omitted). The Court further explained that "if plaintiff did not understand the terms of the sign-off sheet, she had a duty to inquire about its contents." *Id.* 468 N.W.2d at 849.

The Court finds that if Mrs. Myers could not understand the plea agreement for any reason, except mental incapacity, she had the duty to request an explanation. *Horn, supra; Scholz, supra.* Her failure to do so estops her from claiming the contract is void because she did not understand its provisions. *Id.*

■ In addition, being in a state of emotional distress is not a sufficient reason to void a contract. In *Van Wagoner v. Van Wagoner*, 131 Mich.App. 204, 346 N.W.2d 77, 82 (1983) (citing *Star Realty Inc. v. Bower*, 17 Mich.App. 248, 258, 169 N.W.2d 194 (1969)), the court held that "emotional disorders, alone, will not invalidate a contract." Instead, a person must show that he or she lacked the mental capacity to understand the contract. The court in *Star Realty* explained the test for mental capacity as follows:

> The well-settled test of mental capacity to contract . . . is whether the person in question possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged. However, to avoid a contract it must appear not only that the person was of unsound mind or insane when it was made, but that the unsoundness or insanity was of such a character that he had no reasonable perception of the nature or terms of the contract.

*Star Realty*, 169 N.W.2d at 195.

There has been no testimony to suggest that Mrs. Myers was mentally incapable, as the law defines those terms, of entering into the plea agreement on May 16, 1987. Accordingly, the Court finds that Mary Myers was competent to enter into an agreement with the government.

### D.

■ Finally, plaintiff argues that the agreement is unambiguous on its face and does not apply to her. Plaintiff explains that paragraph 4 of the plea agreement states that the lien and lis pendens against the Myers' Estate is effective until "their" tax liability is satisfied, and the United States Tax Court later determined that Mrs. Myers did not have any tax liability for the years 1978 through 1981.[3] Since plaintiff has no tax liability for the years in question, she argues that the agreement does not apply to her.

This Court looks to the language of the agreement to determine the intended meaning of the term "their" used in reference to "tax liability." Paragraph 4 is the only paragraph where the term "their" is used in reference to tax liability. Later in paragraph 4, however, there is a reference to tax liability where the term "their" is not used. The sentence states, "In the event that the property is needed for civil tax collection, the defendant and his wife agree to execute all necessary documents. . . ." This Court finds that this sentence clearly means that if either Matthew Myers or Mary Myers have outstanding tax liability, they may be required to transfer the property to the Internal Rev-

---

**3.** The United States Tax Court entered a decision on September 25, 1991, in *Matthew Myers and Mary Myers v. Commissioner of Internal Revenue*, Docket No. 16451–91, finding no tax liability against Mary Myers for the years 1978, 1979, 1980 and 1981. The government does not dispute this finding.

enue Service to satisfy that tax liability. Furthermore, paragraph 10 of the agreement states, "Nothing in this agreement is intended in any way to compromise any civil tax liability the defendant or his wife may have to the United States." (emphasis added).

The Court finds that because the use of the word "their" in paragraph 4 was not intended to restrict the applicability of the contract, the word "their" does not mean Mrs. Myers is only bound by the agreement if she has personal tax liability. The Court finds that when Mrs. Myers signed the agreement, she agreed to transfer her interest in the estate if it is needed to satisfy either her or her husband's tax liability.

### III.

#### CONVEYANCE OF THE RESIDENCE

As explained above, the Court finds that the plea agreement is valid and enforceable against Mary Myers. However, in Count I of its counterclaim the government also requests that the Court enter an order "enforcing the May 16, 1986 plea agreement and requiring Matthew J. and Mary J. Myers to execute all documents necessary to convey and transfer their residence to the District Director of Internal Revenue."

Paragraph 4 of the plea agreement provides that *"[i]n the event that the property is needed for civil tax collection,* the defendant and his wife agree to execute all necessary documents to transfer and convey the property to the Internal Revenue Service for tax collection purposes." (Emphasis added.) Because this proceeding was bifurcated, the parties have not yet addressed whether the property "is needed for civil tax collection." Accordingly, the Court will permit the parties to file briefs on this issue, which the Court will resolve through a separate opinion.

### IV.

#### CONCLUSION

For the foregoing reasons, this Court finds that the plea agreement is valid and enforceable against Mary Myers. As a result of this finding, the Court need not reach the remaining issues presented in the government's counterclaim.

The Court will enter judgement for the government and against Mary Myers on her complaint. In addition, the Court will order the parties to provide argument and evidence regarding whether the property is needed for civil tax collection before entering a separate opinion on Count I of the government's counterclaim.